Karen O. Hourigan (SBN 206957)
1706 Waller Street
San Francisco, California 94117
Telephone: 415.371.9255
E-mail: khourigan@exitherasap.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN O. HOURIGAN, | ) |
| | ) Case Number: _____ |
| Plaintiff, | ) |
| | ) **VERIFIED COMPLAINT FOR** |
| vs. | ) **DECLARATORY JUDGMENT AND** |
| | ) **INJUNCTIVE RELIEF** |
| REDGRAVE LLP; and OGLETREE, | ) |
| DEAKINS, NASH, SMOAK & STEWART, | ) |
| P.C., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

Plaintiff, Karen O. Hourigan, for her Verified Complaint for Declaratory and Injunctive Relief, alleges as follows:

1.      This case involves and arises from an employment dispute between Plaintiff and her former employer, Defendant Redgrave LLP.  In two proceedings that Redgrave LLP has initiated against Plaintiff, Defendant, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree") represents Redgrave LLP.  Ogletree has represented Redgrave LLP since at least December 17, 2021, when it first communicated with Plaintiff's prior counsel.

2.     Ogletree filed a Declaratory Judgment action on April 26, 2022 in Pinellas County, Florida on behalf of Redgrave LLP and against Plaintiff.

3.     Subsequently, on April 29, 2022, Ogletree submitted a Demand for Arbitration with JAMS on behalf of Redgrave LLP and against Plaintiff.  The requested location for arbitration, without any discussions with Plaintiff or her prior counsel, is Miami, Florida.

4.     Plaintiff and Defendants (collectively, the "Parties") dispute the existence of any purported agreement to arbitrate this employment dispute.  Defendants maintain that Plaintiff and Redgrave LLP are bound by a partnership agreement which includes a mandatory arbitration provision, and thus, have an obligation to arbitrate the claims in this employment dispute. Plaintiff maintains, however, that there is no valid partnership agreement between the Parties that requires Plaintiff to submit her claims to arbitration.  Plaintiff may therefore be freed from the harm resulting from being forced to submit to an arbitration when she never agreed to do so.   As alleged below, the Plaintiff, an at-will employee of Defendant Redgrave LLP, never signed, or otherwise assented to, any partnership agreement, and thus, no agreement to arbitrate was ever formed.

5.     Plaintiff also contends that California Labor Code § 432.6 renders any arbitration agreement involving Plaintiff's claims unenforceable and illegal.  Section 432.6, which became effective January 1, 2020, states that "[a] person shall not, as a condition of employment, continued employment, or the receipt of any employment-related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act . . . or this code, including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity of any alleged violation." (Lab. Code § 432.6(a).)

6.     Defendants' conduct for nearly six months, as well as their conduct to this day, reflects numerous actions that are inconsistent with any right to arbitrate.  This conduct has been prejudicial to Plaintiff and reflects Defendants' election to litigate first and arbitrate second, that, in turn, should result in this Court's determination that Defendant Redgrave LLP has waived,

forfeited, or relinquished any right to arbitrate that it may have had due to Defendants' persistent and concerted course of conduct against Plaintiff that has been inconsistent with enforcing any purported right to arbitrate.

7.      Because Defendants, acting in concert, have threatened to force Plaintiff into binding arbitration based on an agreement that she has neither seen nor signed, attempted to force Plaintiff to arbitrate an employment dispute is not arbitrable under the unenforceable agreement, and because forcing Plaintiff to arbitrate as a condition of her employment violates California Labor Code Section 432.6 and the federal Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Defendant's conduct already has and likely will continue to irreparably harm Plaintiff by requiring her to submit to arbitration when she did not agree to do so.  Accordingly, Declaratory judgment and Injunctive relief are proper.

## JURISDICTION AND VENUE

8.      This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because (i) the value of declaratory and injunctive relief sought and the extent of the injury to be prevented exceed the sum of $75,000, exclusive of interest and costs; and (ii) the named parties are citizens of different U.S. states and foreign states.

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because an actual controversy exists between the Parties within the meaning of 28 U.S.C. § 2202, which is of sufficient immediacy and reality to warrant declaratory relief.

10.     This Court has personal jurisdiction over Defendants because each Defendant owns and operates a business in this jurisdiction and has several employees in the State of California.  The Court also has personal jurisdiction over Defendants because they or their representatives travel to California for business purposes on a regular basis.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(a) in this District because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district.

## PARTIES

12.     Plaintiff is a female attorney and a founding partner of Redgrave LLP.  She worked there from time to time in its San Francisco office for approximately ten years. Throughout her tenure there, Ms. Hourigan was a hard-working employee who diligently performed all her duties on a regular basis.

13.     Plaintiff is a member in good standing and licensed to practice law in Washington, D.C., and California.  She is a Chambers & Partners recognized eDiscovery litigator.  She resides in San Francisco, California and has lived there since 2003.

14.     Plaintiff's allegations in this Verified Complaint are made upon Plaintiff's personal knowledge.

15.     Defendant Redgrave LLP is a limited liability partnership organized and existing under the laws of the State of Delaware and has its principal place of business in Chantilly, Virginia.  Redgrave LLP maintains offices in Los Angeles and San Francisco, California. Redgrave LLP's business office in San Francisco is 201 Mission Street, 12th Floor, San Francisco, California 94105.

16.     Defendant Ogletree is a law firm with offices worldwide, including six offices in California.  In the United States, Defendant Ogletree operates through Ogletree, Deakins, Nash, Smoak & Stewart, P.C., a South Carolina Professional Corporation whose principal office is located at 300 North Main Street, Greenville, SC 29601.  Ogletree's California offices are located in Los Angeles, Orange County, Sacramento, San Diego, San Francisco, and Torrance.

## FACTUAL ALLEGATIONS

17.     Defendant Redgrave LLP is a law firm.

18.     Defendant Ogletree is one of the largest labor and employment law firms in the United States.  It specializes in defending employers against individual and class action employment lawsuits, including lawsuits for gender discrimination and sexual harassment.

19.     On February 14, 2016, Jonathan M. Redgrave and Victoria Redgrave, then the Executive Committee of Redgrave LLP, provided an amended partnership agreement to Plaintiff

and the only other female partner at Redgrave LLP at that time that purported to change their status from equity partners to non-equity partners, with a significant reduction in compensation.

20.     Rather than sign that amended agreement, Plaintiff withdrew from the partnership and the partnership agreement.  Plaintiff engaged an attorney to negotiate her withdrawal from the partnership.  That process took nearly nine months.

21.     At its conclusion, Plaintiff and Redgrave LLP entered into a Mutual Release, Indemnification, and Certification Agreement on or about November 14, 2016 ("November 14, 2016 Agreement").   This agreement has never been amended.   Victoria Redgrave, then Managing Partner, executed the November 14, 2016 Agreement on behalf of Redgrave LLP.

22.     Paragraph 8 of the November 14, 2016 Agreement states: "Governing Law/Arbitration.  This Agreement shall be construed under Delaware law without regard to its provisions regarding conflicts of laws.  Any dispute, claim or controversy arising out of or relating to this Agreement, including scope or applicability of this agreement to arbitrate shall be resolved through final and binding arbitration administered by JAMS pursuant to the Comprehensive Arbitration Rules then in effect and before a single arbitrator.  Judgment upon the award may be entered in any court having jurisdiction."

23.     In 2018, Plaintiff was constructively discharged by Defendant, Redgrave LLP.  In January 2019, Plaintiff and Redgrave LLP entered into an Agreement and General Release ("January 2019 Agreement").  Michael Bonanno, Executive Director of Redgrave LLP, executed the January 2019 Agreement on behalf of Redgrave LLP.

24.     That process took nearly two months.  More than a week after Plaintiff sent additional changes to the draft agreement in December 2018, a representative of Defendant Redgrave LLP responded via electronic mail stating, "I did not expect to receive blackline edits on the document that I sent, and thus I needed to review your requested changes.  In an effort to bring this to closure, the Firm is willing to make final changes to the agreement as set forth below.  If you agree with these changes, please sign the attached clean version of the document (we will not execute a blacked-out document)."

25.     Paragraph 12 of the January 2019 Agreement states: "Governing Law and Interpretation.  This Agreement shall be governed and conformed in accordance with the laws of the State of California without regard to its conflict of laws provision.  In the event of breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be made to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect."

26.     There is no mandatory arbitration provision in the January 2019 Agreement.

27.     In March 2021, Defendant Redgrave LLP offered employment to Plaintiff as a Non-Equity Partner.  Plaintiff and Jonathan M. Redgrave, Managing Partner, the sole member of the Executive Committee, and the only equity partner at Redgrave LLP, communicated over the phone, and through emails and other written communications regarding Defendant Redgrave LLP's offer of employment to Plaintiff.

28.     On March 9, 2021, Mr. Redgrave sent components of a draft offer package to Plaintiff.  In the Non-Equity Partner Compensation Memorandum ("March 9 Compensation Memorandum"), it indicates that the Compensation Memorandum was being provided to Plaintiff pursuant "the Firm's Second Amended and Restated Limited Liability Partnership Agreement (effective as of January 1, 2021)."

29.     Plaintiff and Mr. Redgrave discussed changes Plaintiff wanted to the Compensation Memorandum.  Three such changes involved (1) the date Defendant Redgrave LLP would pay Plaintiff a signing bonus, (3) Plaintiff's start date at Redgrave LLP, and (3) the number of client billable hours recorded by Plaintiff to entitle her to a non-discretionary bonus to be paid on or before February 28, 2022.

30.     On March 19, 2021, Mr. Redgrave transmitted another offer package to Plaintiff via electronic mail that included Plaintiff's requested revisions to the Compensation Memorandum.  As with the March 9, 2021 draft offer package, the March 19, 2021 Non-Equity

Partner Compensation Memorandum ("March 19 Compensation Memorandum") indicates that the Compensation Memorandum was being provided to Plaintiff pursuant "the Firm's Second Amended and Restated Limited Liability Partnership Agreement (effective as of January 1, 2021)."

31.     The March 19, 2021 Compensation Memorandum also promised Plaintiff that she "will receive a memorandum from the Executive Committee in December 2021 setting forth your Non-Equity Partner Compensation for 2022." It further sets forth what Plaintiff's minimum compensation for 2022. Redgrave LLP ceased compensating Plaintiff as of April 4, 2022.

32.     Also included in the March 19, 2021 offer package was a letter ("March 19, 2021 Offer Letter") from Redgrave LLP's Executive Committee (i.e., Mr. Redgrave). The March 19, 2021 Offer Letter included several provisions that obligated Defendant Redgrave LLP to perform certain activities and/or provide certain items of value to Plaintiff:

      a.   "A copy of the Partnership Agreement will be provided to you."

      b.   "You will be required to sign a Joinder Agreement to reflect your agreement to the Partnership Agreement. A copy of the Joinder Agreement is attached."

      c.   "Your Firm business office address for letterhead and business card purposes will be at a business location in San Francisco, which has not yet been determined."

      d.   "The Executive Director will work with you to determine the most feasible location for your office prior to your start date."

      e.   "(You would execute the Joinder Agreement on the date that you join the Firm.)"

33.     Redgrave LLP did none of the things promised in the above paragraph or has otherwise breached the March 19, 2021 Offer Letter. Relevant to this Complaint are Defendant Redgrave LLP's failures described in Paragraph 32 a., b., and e.

34.     The March 19, 2021 Offer Letter also states, "irrespective of any prior conversations you have had with any partners of the Firm, all of the terms of this offer are set forth in this letter."

1
2
3

35.     While Plaintiff and Mr. Redgrave communicated about the offer of employment through at least March 19, 2021, Mr. Redgrave informed Plaintiff that the partnership agreement provided in his March 19, 2021 email to her was a draft that needed to be revised.

4
5

36.     Plaintiff has never seen a "2020 Partnership Agreement" as that term is used in Redgrave LLP's legal actions against Plaintiff.

6
7

37.     There is no dispute that Plaintiff did not receive or sign (and has never received or signed) the Joinder Agreement described in Paragraph 32.e above.

8
9
10
11

38.     Plaintiff also did not review the draft partnership agreement provided in Mr. Redgrave's March 19, 2021 email because it was a draft and not a final version ready for her review.  Plaintiff also did not engage an attorney to provide legal counsel to her regarding the draft partnership agreement because it was a draft.

12
13
14
15
16

39.     Ogletree has filed two separate proceedings against Plaintiff where venue is improper and where Redgrave, through its counsel, Ogletree, contends that Plaintiff is compelled to arbitrate this employment dispute at JAMS.  Redgrave LLP and Ogletree advance an argument that Plaintiff is subject to a mandatory arbitration provision of a "2020 Partnership Agreement" that she has never seen, and the Parties agree that she did not sign.

17
18
19
20
21
22
23

40.     The relevant arbitration clause in the 2020 Partnership Agreement states: "Arbitration.  Any dispute relating to this Agreement between or among the Firm, any one or more Partners, any one or more Former Partners, any Beneficiary, and/or any other representative(s) of any Former Partner(s) or any of the foregoing, shall be resolved through final and binding arbitration conducted in accordance with the Comprehensive Arbitration Rules of JAMS by a panel of three arbitrators in a location mutually agreed by the parties thereto or, in the absence of agreement, in Washington, D.C."[1]

24
25
26
27
28

---

[1] The source of this information is a heavily redacted version of the "2020 Partnership Agreement" appended to the Complaint Defendants filed against Plaintiff in state court in Florida.  This Complaint and the exhibits thereto are appended to the Declaration of Karen O. Hourigan, submitted with Plaintiff's Ex Parte Application for a Temporary Restraining Order which Plaintiff will file shortly after initiating this lawsuit by filing this Complaint,

41.     Rule 11 of the Comprehensive Arbitration Rules of JAMS (effective June 1, 2021) is relevant to this dispute.[2]  It states:

Rule 11. Interpretation of Rules and Jurisdictional Challenges

(a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing.  The resolution of the issue by the Arbitrator shall be final.

(b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c) Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d) The Arbitrator may, upon a showing of good cause or sua sponte, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may be altered only in accordance with Rules 22(i) or 24.

42.     Notably, this delegation of authority to resolve certain disputes is narrow and it does not include any agreement to allow a JAMS arbitrator to resolve disputes regarding illegality or waiver of any mandatory arbitration provision.  Therefore, even if a valid partnership agreement exists, such disputes regarding illegality and waiver of the arbitration provision are properly before this Court because there is no evidence that the parties clearly and unmistakably delegated these issues to an arbitrator to decide.

43.     The 2020 Partnership Agreement was signed by Mr. and Ms. Redgrave and witnessed by Mr. Redgrave's mother, Esther L. Redgrave, on New Year's Eve in 2020.  The Effective Date of that partnership agreement is December 31, 2020, not January 1, 2021, which

---

[2] According to JAMS' "SUMMARY OF REVISIONS TO COMPREHENSIVE ARBITRATION RULES," no changes were made to Rule 11 through the changes to JAMS Comprehensive Arbitration Rules when they were updated and made effective on June 1, 2021.

is the effective date of any partnership agreement applicable to Plaintiff as set forth in the March 9 Compensation Memorandum and the March 19 Compensation Memorandum that Defendant Redgrave LLP provided to Plaintiff in 2021.

44.   This date discrepancy is significant to Plaintiff because Victoria Redgrave redeemed her partnership units as of 12:01 a.m. on January 1, 2021 and, according to the draft partnership agreement that Redgrave LLP provided to Plaintiff, Ms. Redgrave retired from Redgrave LLP at that time.

45.   At or around that time, and possibly in November or December 2020, Ms. Redgrave became in-house counsel at Juul Labs.  Currently, she is identified as Of Counsel at Redgrave LLP as her employment at Juul Labs ended in or around May 2021.

46.   On May 10, 2021, Plaintiff re-joined Redgrave LLP as an at-will employee. Plaintiff was not informed at any time before this date that Ms. Redgrave would be rejoining Redgrave LLP in any capacity.  Had Plaintiff been made aware of this material fact, she would not have rejoined Redgrave LLP in any capacity.  Currently, Ms. Redgrave is identified as Of Counsel at Redgrave LLP.

47.   On May 27, 2021, Plaintiff signed an acknowledgement that she had received and reviewed Redgrave LLP's Employee Handbook.  In at least four places in that Employee Handbook, it instructs that Plaintiff's employment at Redgrave LLP was at-will.

48.   The Acknowledgement that Plaintiff signed states, in pertinent part: "Employment with Redgrave is 'at-will,' meaning that my employment may be terminated by me or by the Firm at any time for any non-discriminatory reason.  Further, my signature below does not create an employment contract between the Firm and me."

49.   On December 17, 2021, Redgrave LLP abruptly and without warning placed Plaintiff on paid administrative leave, removed her access to Redgrave's electronic document platforms and her Redgrave LLP-issued laptop and iPhone.  Redgrave LLP also terminated a secondment with a client that began on December 1, 2021 where Plaintiff was the secondee. This date also coincided with Plaintiff's pro bono client's mediation here in the Northern District of California.

50.     Beginning on December 17, 2021, Defendant Ogletree, through its attorneys located in Oklahoma City, Oklahoma, and San Francisco, California, communicated frequently with Plaintiff's prior counsel regarding negotiating a severance package, return of Redgrave LLP and the secondment client's documents and equipment, and Plaintiff's continued requests to have access to her files to allow her to represent her and Redgrave LLP's pro bono client.

51.     In an email dated December 21, 2021, Defendant Ogletree stated, "it is apparent that the employment relationship with Karen and Redgrave is beyond repair." Redgrave LLP, through Defendant Ogletree, proposed numerous terms to Plaintiff's separation that (1) never invoked any partnership agreement, including any mandatory arbitration clause, and (2) indicated that "[t]he date of separation will be as soon as possible, and in no event later than December 31, 2021."

52.     In a later email dated December 21, 2021, Ogletree stated, "Please let us know by noon ET on 12/31/2021 whether Karen accepts the offer.  If she does not accept the offer by that date, Redgrave will proceed with termination."

53.     On December 28, 2021, Plaintiff's prior counsel communicated with Ogletree and informed it that Plaintiff rejected the offer.  In an email sent to Ogletree, Plaintiff's prior counsel also stated, "[i]f Redgrave wishes to pursue settlement, Karen would entertain a best and final offer."

54.     The same day, notwithstanding the above, Ogletree sent an email to Plaintiff's prior counsel stating, in pertinent part, "if Karen rejects our client's offer, she needs to make a counteroffer with specific terms by COB on December 29 for our client's consideration.  Our client will not bid against itself.  Otherwise the clock is ticking on our client's offer, which will be automatically revoked at noon ET on 12/31 if it is not accepted or specifically countered."

55.     On December 30, 2021, Ogletree communicated again with Plaintiff's prior counsel via email and indicated that Redgrave LLP was Plaintiff's "soon to be former employer."  Ogletree further stated the following regarding Redgrave LLP's severance offer (which Plaintiff already rejected), "The deadline is noon tomorrow.  It is a feasible deadline, and

1  I presume your client has a cell phone and can be contacted.  If you have a specific counteroffer,

2  now is the time to send it on, or, better yet, schedule a call with us to discuss it."

3      56.    During this nearly two-week timeframe over the holidays in 2021, neither

4  Defendant invoked any partnership agreement or any mandatory arbitration provision to resolve

5  the underlying employment dispute.

6      57.    On January 4, 2022, Redgrave LLP unilaterally terminated Plaintiff's

7  employment after its one-member Executive Committee determined in his sole discretion that it

8  was in Redgrave LLP's best interests that Plaintiff leave the firm.  In a letter from Redgrave LLP

9  to Plaintiff, Mr. Redgrave stated, "[t]his letter provides you with ninety (90) days' prior written

10  notice from the Executive Committee under Section 7.3(c) of the Redgrave LLP (the "Firm")

11  Second Amended and Restated Limited Liability Partnership Agreement ("Partnership

12  Agreement") that the Executive Committee has determined, in its sole discretion, that it is in the

13  best interest of the Firm for your status as a Non-Equity Partner (and your employment with the

14  Firm) to be terminated on Monday, April 4, 2022 (90 days from today), unless we mutually

15  agree on an earlier date."

16      58.    Notwithstanding the above communications between Ogletree and Plaintiff's

17  prior counsel in December 2021, January 4, 2022 was the first time that Redgrave LLP

18  mentioned a partnership agreement governed Plaintiff's departure from Redgrave LLP.  Again,

19  however, the January 4, 2022 letter does not invoke any mandatory arbitration obligation.

20      59.    This turned out to be fraud, which Plaintiff learned only after exercising her

21  statutory rights in California and discovered that she never signed any partnership agreement or

22  Joinder Agreement, despite the March 19, 2021 employment offer letter's promise that, in the

23  future, Redgrave LLP would provide Plaintiff with a copy of the partnership agreement and a

24  Joinder Agreement to sign when she rejoined Redgrave LLP.  That never happened.

25      60.    On January 6, 2022, Plaintiff's prior counsel sent a letter to Ogletree.  In part, it

26  stated, "[a]s you are aware, I represented Ms. Hourigan in 2016 when she withdrew from the

27  partnership at Redgrave LLP after (again, abruptly) being provided with an Amended

28  Partnership Agreement that would have converted her (a Founding Partner of Redgrave LLP)

from an equity partner to a non-equity one. During that engagement, I observed what I believe were improper tactics used by Redgrave LLP in delaying and complicating a relatively simple process in a deliberate attempt to drive up Ms. Hourigan's legal fees. Redgrave LLP's demands over the past 2-3 weeks seem to reflect a rebirth of this tactic. Redgrave LLP has not provided any responses to multiple questions I have asked and, instead, vacillates between repeating impossible and inappropriate demands on my client or moving the goalposts in a manner that makes any purported 'offer' from Redgrave LLP to be incoherent, inconsistent, and ultimately unintelligible such that providing a meaningful response would not be productive."

61.   In response to Plaintiff's prior counsel's letter, on January 7, 2022, Ogletree stated, "[w]e appreciate the fact that Ms. Hourigan is interested in resolving the dispute between our clients. Redgrave shares that goal. In order to make progress, we all need to recognize and accept that the employment relationship between Ms. Hourigan and Redgrave is irrevocably broken, and now both parties should strive to find a way to move forward in order to go amicably in separate directions."

62.   In the same January 7, 2022 email communication, Defendant Ogletree stated, to Plaintiff's prior counsel, "[y]ou state that your client is open to resolving this matter under reasonable terms, on an expedited basis. The next step in good faith is for you to engage in a phone call with us (and please include any other counsel that Ms. Hourigan has retained for this matter) so that we can all discuss the claims that are or may be alleged, your client's specific demands and how we can move to a reasonable resolution for all." Again, neither Defendant invoked any binding arbitration clause of any agreement at this time.

63.   On January 26, 2022, Plaintiff communicated with Redgrave LLP employees, and requested that her employee records be provided to her pursuant to California Labor Code §§ 1198.5 et seq., 432, and 226 subd. (b). This request was necessitated by Defendants' failures to provide Plaintiff with several of the materials encompassed by these statutes notwithstanding Ogletree's representations to Plaintiff's prior counsel that Defendants would provide these documents to Plaintiff.

64.     Plaintiff had no recollection or record of signing any partnership agreement or Joinder Agreement once she re-joined Redgrave LLP.   Therefore, she requested that her employment records be provided to her so she could confirm her recollection, which turned out to be accurate, and the Parties do not dispute that Plaintiff did not sign any partnership agreement or Joinder Agreement in 2021.

65.     On January 28, 2022, Ogletree and Plaintiff's prior counsel communicated orally through a conference call to discuss potentially resolving the underlying employment dispute and several outstanding issues.   Upon information and belief, Plaintiff understands that Ogletree beseeched Plaintiff's prior counsel to inform and advise Plaintiff to provide an offer of compromise to resolve the underlying employment dispute.   Upon information and belief, Plaintiff understands that no one from Ogletree mentioned that the Parties were required to submit to mandatory binding arbitration.

66.     On February 9, 2022, Defendant Redgrave LLP provided the first installment of Plaintiff's requested employment records to her.   This is the latest date upon which Defendant Redgrave LLP knew or should have known that Plaintiff never signed a partnership agreement or Joinder Agreement in 2021.

67.     On March 17, 2022, following weeks of email communications, Ogletree and Plaintiff's prior counsel communicated orally through a conference call.   Among other topics discussed, Ogletree committed to providing Plaintiff's prior counsel with a "Certificate of Return of Property and Release, per the Partnership Agreement."   Based upon information and belief, at no time during this conference call did Ogletree invoke the mandatory arbitration clause of any partnership agreement.

68.     In an email dated March 18, 2022, Plaintiff's prior counsel communicated to Ogletree that, regarding the underlying employment dispute, "Karen's claims against Redgrave LLP: per your request, we will provide a letter addressing Karen's claims.   We understand that you would like this as soon as possible.   We will be able to issue the letter sometime after Karen's return from travel on 3/22/22."

69.     On March 22, 2022, Ogletree responded to this email.  Regarding the upcoming delivery of Plaintiff's offer of compromise, Ogletree stated, "We look forward to receiving it." Again, there was no mention of any mandatory arbitration clause of any partnership agreement.

70.     In the same email communication, regarding the "Certificate of Return of Property and Release, per the Partnership Agreement" that Ogletree committed to provide on March 17, 2022, Ogletree reversed course and stated, "[w]e will await the letter regarding Ms. Hourigan's claims before sending drafts or engaging in further communication."  Nowhere in its response to Plaintiff's prior counsel's email communication did Ogletree invoke the mandatory arbitration clause of any partnership agreement.

71.     Notwithstanding the above, on April 1, 2022, Ogletree provided Plaintiff's prior counsel with a draft Agreement and General Release for Plaintiff to review and sign.   In the email communication attaching the draft agreement, Ogletree noted that it understood that Plaintiff's offer of compromise was "forthcoming."  Further, Ogletree invoked a provision of the partnership agreement that relates to releases but did not involve the mandatory arbitration clause of any partnership agreement.

72.     On April 4, 2022, Plaintiff, through her prior counsel, delivered to Defendants the offer of compromise that they requested in January 2022.  That same day, Plaintiff resigned from Redgrave LLP.   Following receipt of this communication, Ogletree requested to have a telephonic conference call with Plaintiff's prior counsel.

73.     On April 6, 2022, Ogletree and Plaintiff's prior counsel participated in a conference call to discuss Plaintiff's offer of compromise.  During that call, based on information and belief, Ogletree and Redgrave LLP requested that the Parties agree to participate in voluntary mediation.  Based on information and belief, at no time during this conference call did Ogletree invoke the mandatory arbitration clause of any partnership agreement or other agreement.

74.     That same day, Plaintiff's prior counsel communicated to Ogletree that Plaintiff, who by then was no longer employed by Redgrave LLP, was not interested in mediating the underlying employment dispute.

75.     On April 15, 2022, the date when Plaintiff's offer of compromise expired, an attorney from Ogletree's Orange County, California office sent a letter to Plaintiff's prior counsel rejecting Plaintiff's offer and providing a counteroffer.   Ogletree again proposed mediation.  Again, Ogletree did not invoke the mandatory arbitration clause of any partnership agreement or other agreement in this letter.

76.     On April 18, 2022, Plaintiff's prior counsel communicated with Ogletree via email and informed Ogletree that Plaintiff rejected Redgrave LLP's counteroffer and Defendants' proposal that the Parties participate in voluntary mediation.  In that communication, Plaintiff's prior counsel proposed that the parties agree to participate in baseball-style arbitration with a mediator in an effort to resolve the underlying employment dispute without resorting to litigation.  The deadline for Defendants to agree to this approach was 5:00 p.m. ET on April 22, 2022.

77.     Defendants did not agree to this proposed approach to resolve the underlying employment dispute.  Therefore, the offer expired and Defendants rejected an opportunity to participate in voluntary baseball-style arbitration conducted by a mediator.

78.     On April 22, 2022, Ogletree transmitted a letter to Plaintiff's prior counsel.  This letter (1) threatened to pursue claims against Plaintiff by invoking the partnership agreement, (2) proposed (again) that the parties participate in voluntary mediation, and (3) requested, for the first time, that Plaintiff make herself available for an interview with Ogletree.

79.     On April 26, 2022, an attorney from the Tampa, Florida office of Ogletree initiated a Declaratory Judgment action on behalf of Redgrave LLP against Plaintiff, a resident of San Francisco, California, at all times relevant to the claims in this Complaint and to this day.  This action is currently pending in state court in Pinellas County, Florida.

80.     On April 27, 2022, Ogletree's attorney from its Tampa office contacted Plaintiff's prior counsel.  Upon information and belief, the topics of discussion included the filing of this lawsuit in Florida and Defendants' request that Plaintiff's prior counsel accept service of the Complaint filed in that lawsuit.  Based on information and belief, Ogletree indicated that it had prepared a demand for arbitration for arbitration with JAMS but had not yet filed it with JAMS.

81.     During this April 27, 2022 telephone call, Ogletree described Defendants' position that once arbitration was initiated at JAMS, all claims would be preempted, possibly including the action for Declaratory Judgment that Defendants initiated in state court in Florida notwithstanding the fact that the civil action was filed before Defendants initiated any arbitration proceedings with JAMS.

82.     On April 28, 2022, Plaintiff obtained a Notice of Right to Sue Letter from California's Department of Fair Employment and Housing ("DFEH"). Among other things, this Notice of Right to Sue Letter authorizes Plaintiff to pursue her employment claims, including those alleging unlawful sexual harassment.

83.     On April 29, 2022, Defendants submitted a Demand for Arbitration Form to JAMS. At this time, Defendants provided no notice to Plaintiff or her prior counsel that the Demand for Arbitration had been transmitted to JAMS. A new attorney from Ogletree's Orange County, California office submitted this Demand for Arbitration to JAMS.

84.     On April 29, 2022, Plaintiff's prior counsel communicated with Ogletree via email and indicated that Plaintiff authorized her prior counsel to accept service of the Complaint filed in state court in Florida.

85.     On May 10, 2022, Plaintiff's prior counsel communicated via email with Ogletree indicating Plaintiff's willingness to mediate based on certain conditions. Plaintiff's offer to mediate stemmed from (1) the prior working relationship between Plaintiff's prior counsel and the attorney from Ogletree's Tampa office, and (2) Plaintiff planned to be in Florida for a few days in early June 2022.

86.     Between May 10, 2022 and June 1, 2022, Defendants agreed that Redgrave LLP would be responsible for all the costs of mediation.

87.     During this time, Defendants rejected (1) Plaintiff's proposed mediators, and (2) Plaintiff's proposed location for mediation, which was her prior counsel's office. Instead, Plaintiff agreed to proceed with Defendants' proposed mediator at Defendants' selected location, which was not convenient for Plaintiff.

88.     On June 2, 2022, the Parties participated in a voluntary mediation that lasted approximately seven hours.

89.     Although all Parties agreed that they would be better served by attempting to resolve their disputes through negotiation and mediation, these efforts proved unsuccessful. From Plaintiff's perspective, the Parties' first attempt at voluntary mediation is now closed.  In part, this is because the underlying employment dispute has nothing to do with Florida and Defendants' selected mediator is based in Tampa, Florida.

90.     On June 13, 2022, Plaintiff filed a Motion to Dismiss Complaint for Declaratory Judgment in the case pending in state court in Florida.

91.     That same day, Plaintiff sent the DFEH Notice of Right to Sue to several employees of Redgrave LLP.

92.     On June 14, 2022, Ogletree attempted service on Plaintiff of the Demand for Arbitration form it submitted to JAMS.  Based on information and belief, Plaintiff has not been formally or properly served with this document.  She received it in her personal email account. Based on information and belief, Ogletree sent it to a residential location in Florida that is not Plaintiff's residence.  Plaintiff, who has not been in the State of Florida since June 4, 2022, has not received the Demand for Arbitration that Ogletree sent to a residential address in Florida.

93.     Defendants revealed Plaintiff's personal email address and a residential address to JAMS without Plaintiff's notice, permission, or consent.

94.     Defendant Redgrave LLP has invoked the November 14, 2016 Agreement, the January 19, 2019 Agreement, and a "2020 Partnership Agreement" that Plaintiff has never seen nor signed in its Demand for Arbitration filed with JAMS.  Defendants also indicated their desire that this arbitration proceed apace pursuant to JAMS "expedited procedures."

95.     On June 17, 2022, a Senior Case Manager from JAMS communicated with Ogletree and Plaintiff (on her personal email address that Ogletree provided to JAMS) regarding Defendants' Demand for Arbitration.

96.     On June 21, 2022, Plaintiff communicated to the JAMS Senior Case Manager and informed the Senior Case Manager that Plaintiff contests service related to the Demand for Arbitration, as well as JAMS' jurisdiction of the Parties' dispute.

97.     On June 29, 2022, Defendants filed a Response in Opposition to Plaintiff's Motion to Dismiss filed in the lawsuit in state court in Florida.  At Defendants' request, a hearing on Plaintiff's Motion to Dismiss is scheduled for November 14, 2022 in Florida.

98.     Defendants' papers filed with its Response in Opposition to Plaintiff's Motion to Dismiss reveal Plaintiff's sensitive personal information, in contravention of the California Constitution, the California Consumer Privacy Act, and Fla. R. Jud. Admin. 2.425(a)(2).  These papers were filed by an additional attorney from Ogletree's Tampa office, who has entered an appearance in the lawsuit pending in Pinellas County, Florida.

99.     Despite Plaintiff's efforts to meet and confer with Ogletree regarding this invasion of Plaintiff's privacy as a consumer under California law, Defendants have not removed Plaintiff's sensitive personal information from the public court docket in Florida, which causes irreparable harm to Plaintiff.

100.    On July 12, 2022, in a meet and confer related to the lawsuit in a state court in Florida, Plaintiff sought to meet and confer with Defendants regarding the parties' respective efforts to preserve relevant evidence as Plaintiff has repeatedly expressed concerns regarding the scope of Defendants' preservation efforts.  The attorney from Ogletree's Tampa office took the position that evidence preservation is not the proper subject of a meet and confer.  Redgrave LLP's general counsel attended that meet and confer and did not express any disagreement with the attorney from Ogletree's Tampa office.

101.    During this July 12, 2022 meet and confer, Plaintiff reiterated her position to Ogletree that she is not subject to JAMS jurisdiction and that she has not been properly served with the JAMS Demand for Arbitration.  Plaintiff also communicated to Defendants her position that Defendants' multiple and unrelenting actions involving Plaintiff's employment at Redgrave LLP are inconsistent with any right to arbitration and have resulted in Redgrave LLP's relinquishment, waiver, or forfeiture of any right to arbitrate.

102.    At that meet and confer, an attorney from Ogletree's Tampa office made clear that he would communicate to JAMS that the arbitration should move forward in Washington, D.C., and that JAMS should provide the Parties with a panel of potential arbitrators.

103.    As promised, on July 12, 2022, this attorney from Ogletree's Tampa office informed the JAMS Senior Case Manager that the arbitration will proceed in Washington, D.C. and requested to receive a list of arbitrators to proceed ahead with the arbitration to which Plaintiff is not required to submit given that she has not agreed to submit to arbitration.

104.    On July 13, 2022, Plaintiff blocked the JAMS Senior Case Manager's email account from communicating with Plaintiff about Defendants' Demand for Arbitration and informed the JAMS Senior Case Manager that Defendants' efforts to require Plaintiff to submit to arbitration proceedings that (1) she has not agreed to and, (2) purportedly, were a condition of her employment that commenced in May 2021, violate Cal. Labor Code § 432.6.   Such a violation is punishable as a misdemeanor as the court held in the *Reed v. Imperfect Foods, Inc.* matter, on March 17, 2021 in San Francisco Superior Court.

105.    On July 14, 2022, Defendants filed a Notice of Hearing on Plaintiff's Motion to Dismiss in the Florida state court proceeding.

106.    On July 21, 2022, Plaintiff contacted Ogletree to request its availability for an emergency hearing regarding scheduling with the court in Pinellas County to discuss whether an earlier hearing date is available with that court.

107.    The same day, Peter Zinober of Ogletree responded that (1) he has no availability for a hearing before August 15, 2022 (despite having availability to pursue the arbitration proceeding at JAMS), and (2) a female associate who is counsel of record in the Florida matter cannot represent Redgrave LLP at an emergency hearing for scheduling purposes.

108.    Later in the day on July 21, 2022, Mr. Zinober communicated with Plaintiff and revealed Defendants' strategy in pursuing the JAMS arbitration that supports Plaintiff's claims of the irreparable harm she will suffer if the JAMS arbitration is allowed to continue without this Court answering several gateway questions related to any purported mandatory arbitration.

109.     Specifically, Mr. Zinober stated, "Karen, I was incorrect.  I am not available for an expedited hearing on your motion to dismiss on the August dates I provided.  Moreover, we are not interested in an expedited hearing at all, because, under both federal and Florida law, the issue of arbitrability resides with the arbitrators, and not with the courts.  That is incorporated in both the JAMS Rules and in the arbitration agreements.  By the time of our presently scheduled hearing, that issue may well have been decided by our arbitrators. Thus, it would be a waste of the court's time to prepare for and to hold a hearing before the date it is presently scheduled."

110.     On July 21, 2022, Plaintiff informed Ogletree and JAMS via email that she would be filing this lawsuit in this Court seeking Declaratory Judgment and Injunctive Relief shortly.

111.     Upon information and belief, this communication from Plaintiff has not resulted in even a temporary stay of the JAMS arbitration proceeding.

112.     As of July 23, 2022, less than three months after Defendants initiated the lawsuit in Pinellas County, Florida, 44 documents have been filed in the lawsuit pending in state court in Florida.  Of the 44 documents filed in that proceeding, Defendants filed 30 of them, which is inconsistent with enforcing any right to arbitrate that Redgrave LLP has against Plaintiff, particularly because Defendants initiated the civil action against Plaintiff in Florida.

113.     Given that the Parties' months-long negotiations have failed to resolve the underlying employment dispute, Plaintiff anticipates that Defendants will accelerate their efforts to move forward on an expedited basis in the JAMS arbitration proceeding.

114.     Accordingly, Plaintiff faces an imminent threat that Defendants will force Plaintiff to submit to arbitration when she has not agreed to do so and effectively enjoin Plaintiff from litigating her employment claims, should she elect to do so, in court.  Further, Plaintiff already has been and likely will continue to be irreparably harmed by Defendants' conduct resulting from Defendants' unlawful invasions into Plaintiff's privacy and their refusal to confirm that they have taken and are continuing to take appropriate steps to preserve evidence relevant to the parties' disputes.

# COUNT 1

## (DECLARATORY RELIEF)

115.   The Plaintiff realleges and incorporates the allegations contained in all of the foregoing paragraphs as though fully set forth herein.

116.   This Count is for declaratory relief under 28 U.S.C. § 2201(a).

117.   Pursuant to 28 U.S.C. § 2201, an actual and justiciable controversy within this Court's jurisdiction exists between the parties.

118.   Plaintiff is not and has never been a party to any partnership agreement with Redgrave LLP related to her 2021 employment at Redgrave LLP.

119.   Plaintiff is not and has never been a party to any partnership agreement with Redgrave LLP that would subject her to mandatory arbitration or obligate her to arbitrate her claims.

120.   Defendants have submitted a Demand for Arbitration with JAMS notwithstanding (1) the absence of a valid, enforceable contract requiring mandatory arbitration or any clear and unmistakable indication that Plaintiff has agreed to submit her claims to arbitration; (2) any mandatory arbitration provision in any employment agreement with Plaintiff violates California's Labor Code § 432.6; and (3) Defendants' conduct up to an including to this date reflect their election to proceed with litigation first, not arbitration, which results in waiver, forfeiture, or relinquishment of any right to arbitrate that Redgrave LLP may have had in connection with Plaintiff's prior employment at Redgrave LLP.

121.   The Plaintiff will assert all applicable defenses to the formation of a contract including, but not limited to, Plaintiff disputes the very existence of any partnership agreement which is the document from which any obligation to arbitrate arises; violation of Cal. Labor Code § 432.6; Defendant Redgrave LLP failed to perform on conditions precedent required to form an enforceable contract between Plaintiff and Defendant Redgrave LLP; that the terms of a proposes contract are not definite; that there was no meeting of the minds as to all material terms to form a contract; that any partnership agreement between Plaintiff and Redgrave LLP is invalid and unenforceable because it was obtained through fraud, misrepresentations, and lack

consideration; that Plaintiff did not accept any offer to enter into a partnership agreement with Defendant Redgrave LLP; that there are no arbitrable issues between the Parties; and that the Defendants have waived any right to seek enforcement of a partnership agreement and any arbitration clause by failing to exercise any rights to arbitrate.

122.    The Plaintiff asks the Court to declare that no contract was formed, therefore the Plaintiff has no contractual obligations related to the 2020 Partnership Agreement, any 2021 Partnership Agreement, or Joinder Agreement.

123.    Alternatively, the Plaintiff asks the Court to declare that Defendant Redgrave LLP has waived or forfeited any right to submit any dispute with Plaintiff to arbitration proceedings, and/or that any applicable arbitration agreement violates Cal. Labor Code § 432.6.

124.    A declaratory judgment is appropriate and warranted at this time to determine the rights of the Parties, to mitigate the irreparable harm suffered by Plaintiff, and to prevent Plaintiff from incurring unnecessary damages and attorneys' fees.

**COUNT 2**

**(INJUNCTIVE RELIEF)**

125.    The Plaintiff realleges and incorporates the allegations contained in all of the foregoing paragraphs as though fully set forth herein.

126.    Defendants have initiated an arbitration proceeding with JAMS (JAMS Ref. No. 5460000123, filed on April 29, 2022), seeking relief under the "2020 Partnership Agreement" that Plaintiff has neither seen nor signed.

127.    The Plaintiff seeks the entry of an Order enjoying Defendants and JAMS from proceeding with the arbitration filed by Defendants.

128.    The Plaintiff asserts that no contract exists between the parties so the arbitration clause in the 2020 Partnership Agreement, like the contract as a whole, is not enforceable.

129.    The arbitration proceeding filed with JAMS may not continue because that tribunal has no jurisdiction without an enforceable contract, with an express arbitration provision.

130.     No contract exists between the Parties that includes a "delegation clause" permitting JAMS to address the question of illegality or waiver of any mandatory arbitration provision, therefore those questions must be answered by this Court following a legal determination of whether a valid, enforceable contract exists between the Plaintiff and Defendant Redgrave LLP.

131.     An injunction should be granted in this case to protect the status quo and provide relief for the Plaintiff who will suffer immediate and irreparable injury, loss, or damage if she is required to proceed with arbitration while this Court addresses the foundation question of whether a contract was formed, an arbitrable issue exists, any arbitration clause is lawful, and Defendant Redgrave LLP has waived or forfeited any right to arbitration that it may have had.

132.     The Plaintiff requests that the Court enter an Order prohibiting JAMS from proceeding with the arbitration submitted by Defendants.

133.     There exists a strong likelihood that the Plaintiff will prevail on the merits of her claims in this action.

134.     The benefits to the Plaintiff in obtaining injunctive relief outweigh any potential harm to Defendants.

135.     Unless Defendants are enjoined by this Court, the Plaintiff will suffer immediate and irreparable injury, including the potential loss of the ability to even seek the relief requested in this Court and the entry of an unfavorable award by a JAMS arbitration panel.

136.     In the absence of appropriate injunctive relief, Plaintiff has no adequate remedy at law.  The balance of hardships favors issuance of preliminary injunctive relief, and Plaintiff has a probability of success on the merits of her claims.  Moreover, injunctive relief is appropriate to avoid the necessity of multiple proceedings.

137.     As a matter of public policy, subjecting Plaintiff to arbitration when she has never agreed to do so would result in manifest injustice.

138.     Because Plaintiff does not have an adequate remedy at law, and because Defendants' attempts to force Plaintiff to submit to arbitration proceedings when she did not

agree to do so is contrary to the public interest, Plaintiff requests entry of a preliminary injunction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Karen O. Hourigan, prays that the Court:

A.  Grant declaratory relief pursuant to Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that no enforceable contract or partnership agreement was formed between Plaintiff and Defendant Redgrave LLP in 2021 or thereafter;

B.  Grant declaratory relief pursuant to Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that Plaintiff is not bound by any mandatory arbitration provision in any partnership agreement between Plaintiff and Defendant Redgrave LLP;

C.  Grant declaratory relief pursuant to Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that, if an enforceable contract or partnership agreement was formed between Plaintiff and Defendant Redgrave LLP in 2021 or thereafter, Defendant Redgrave LLP has waived or forfeited any right to arbitration regarding Plaintiff's claims or any dispute relating to any partnership agreement between Defendant Redgrave LLP and Plaintiff;

D.  Grant declaratory relief pursuant to Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that, if an enforceable contract was formed between Plaintiff and Defendant Redgrave LLP in connection with the November 14, 2016 Mutual Release, Indemnification, and Certification Agreement, Defendant Redgrave LLP has waived or forfeited any right to arbitration regarding Plaintiff's claims or any dispute relating to any partnership agreement between Defendant Redgrave LLP and Plaintiff;

E.  Enter an Order halting and staying the JAMS arbitration proceeding (JAMS Ref. No. 5460000123;

F.  Enter an Order requiring that Defendants as well as any persons in active concert or participation with them preserve all relevant evidence in accordance with applicable federal and state rules, and to cease, desist, and refrain from

destroying, removing, altering, modifying, concealing, spoliating, or secreting any documents or electronically stored information relating to this lawsuit in any way, no matter where such information resides, including any documents and electronically stored information stored on any computer, mobile device, or other media;

G. Award Plaintiff reimbursement for any fees and/or costs sustained as a result of needing to file this action;

H. Award Plaintiff punitive damages; and

I. Grant such other and further relief as this Court may deem appropriate.

Date: July 26, 2022                    Sign Name: */s/ Karen O. Hourigan*

                                       Print Name: Karen O. Hourigan

## **<u>VERIFICATION</u>**

I, Karen O. Hourigan, of full age, having been duly sworn, do hereby depose and say that I am Plaintiff in this action, that I am authorized to execute this Verification on my own behalf, and that I have read the foregoing Verified Complaint and all the contents thereof are either true to my knowledge or based on documents that I have reviewed, including my declaration submitted in connection with this Verified Complaint and Ex Parte Application for a Temporary Restraining Order, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of July, 2022, at Erie, Pennsylvania.


Karen O. Hourigan