1  Karen O. Hourigan (SBN 206957)
2  1706 Waller Street
   San Francisco, California 94117
3  Telephone: 415.371.9255
   E-mail: khourigan@exitherasap.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN O. HOURIGAN,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>REDGRAVE LLP; and OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.,<br><br>　　　　Defendants. | Case Number: 3:22-cv-04303<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

## INTRODUCTION

Plaintiff Karen O. Hourigan moves, on an ex parte basis, for a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue against Defendants that enjoins Defendants from seeking to enforce an unsigned partnership agreement through arbitration without first having this Court determine whether (1) a valid, enforceable agreement exists between Plaintiff and Defendant Redgrave LLP, (2) there is a lawful and enforceable arbitration provision if the partnership agreement, and (3) Redgrave LLP has waived, forfeited, or relinquished any right to arbitration through the combined conduct of Ogletree, Deakins, Nash, Smoak & Stewart P.C. ("Ogletree") and Redgrave LLP starting no later than December 17, 2021.  Specifically, Plaintiff seeks a TRO to halt the JAMS arbitration proceedings initiated by Defendants because no enforceable contract containing a lawful and enforceable arbitration clause exists between Plaintiff and Redgrave LLP.  Without a valid and enforceable contract, no contractual obligation exists to submit any dispute to arbitration.  Alternatively, through the concerted conduct of Defendants, Redgrave LLP has waived or forfeited any right to arbitration that may have existed.  Thus, injunctive relief is necessary to prevent irreparable harm to Plaintiff.

## STATEMENT OF FACTS

On May 10, 2021, Plaintiff re-joined Redgrave LLP.  Plaintiff's title was "Partner."  However, Redgrave LLP never provided Plaintiff with a partnership agreement or a Joinder Agreement to sign on the day she started (or any day while she was employed at Redgrave LLP).  This failure was in violation of the March 19, 2021 signed offer letter which included these promises: (1) "[a]copy of the Partnership Agreement will be provided to you . . . . ," (2) "[a] copy of the Joinder Agreement is attached," and (3) "[y]ou would execute the Joinder Agreement on the date that you join the Firm."  None of these actions occurred because Redgrave LLP failed to execute any of them.  These omissions have proved to be costly one and have deprived everyone of time, money, resources, sleep, and the freedom to go forward in their separate ways.

1
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF APPL. FOR TEMPORARY RESTRAINING ORDER

Instead of being provided with and signing any partnership agreement or Joinder Agreement, Plaintiff repeatedly was instructed to acknowledge that she received and understood the Redgrave LLP Employee Handbook ("Handbook").  Plaintiff provided her electronic signature acknowledgement on May 27, 2021.  By doing so, Plaintiff acknowledged that the Handbook informed her several times that her employment at Redgrave LLP was at-will.  Therefore, absent any signed, valid, or enforceable partnership agreement, Plaintiff contends that she was an at-will employee of Redgrave LLP.

On December 17, 2021, Redgrave LLP abruptly placed Plaintiff on paid administrative leave.  From that date through December 30, 2021, Ogletree communicated in writing and through conference calls with Plaintiff's prior counsel and, while attempting to negotiate a severance package that would have had Plaintiff's last day of employment as no later than December 31, 2021, Ogletree never mentioned a partnership agreement or Redgrave LLP's right to submit to arbitration any dispute with Plaintiff.[1]

On January 4, 2022, Redgrave LLP transmitted a letter to Plaintiff titled "Notice of Termination of Non-Equity Partner Position at Redgrave LLP."  Redgrave LLP stated "[t]his letter provides you with ninety (90) days' prior written notice from the Executive Committee under Section 7.3(c) of the Redgrave LLP (the "Firm") Second Amended and Restated Limited Liability Partnership Agreement ("Partnership Agreement") that the Executive Committee has determined . . . that it is in the best interest of the Firm for your status as a Non-Equity Partner (and your employment with the Firm) to be terminated on Monday, April 4, 2022 . . . ."

On January 26, 2022, Plaintiff exercised her California statutory rights to obtain records, including any instrument she signed relating to the obtaining or holding employment at Redgrave

---

[1] Plaintiff acknowledges that it may be viewed as extraordinary that she has named Ogletree as a defendant.  In part, this decision was based on the several months where Ogletree stood in the shoes of her employer for the 90 extra days that she was improperly compelled to remain an employee of Redgrave LLP based on Defendants' false contention that the partnership agreement required it.  Plaintiff has submitted the Declaration of Karen O. Hourigan with several exhibits in support of this ex parte application.

LLP. Defendants provided documents in response to this request in two installments. Neither installment included a signed partnership agreement or joinder agreement.

On April 4, 2022, following repeated requests to provide an offer of compromise to Defendants, Plaintiff sent a combined resignation letter and offer of compromise to Defendant Ogletree through her prior counsel. Plaintiff requested that Defendants accept, reject, or provide a counteroffer by April 15, 2022. On April 15, 2022, Defendants provided a counteroffer to Plaintiff that she rejected on April 18, 2022.

Between April 6, 2022 and May 10, 2022, Defendants proposed that the parties mediate Plaintiff's claims multiple times. On April 22, 2022, Defendants rejected Plaintiff's proposal that the Parties submit their respective offers to a mediator to conduct a baseball arbitration.

On April 26, 2022, Defendants filed a declaratory judgment action in state court in Pinellas County, Florida ("Florida action"). On April 27, 2022, Ogletree informed Plaintiff's prior counsel of the Florida action and inquired whether Plaintiff's prior counsel could accept service on behalf of Plaintiff. Ogletree also informed Plaintiff's prior counsel that Ogletree had prepared, but not yet filed, a demand for arbitration with JAMS.

On April 29, 2022, Defendants submitted a Demand for Arbitration with JAMS, but did not attempt service at that time.

On June 2, 2022, the Parties participated in voluntary mediation in Florida. That mediation is now closed and the Parties have not been able to resolve their dispute.

On June 13, 2022, Plaintiff filed a Motion to Dismiss Redgrave LLP's Complaint in the lawsuit pending in Pinellas County, Florida. At Defendants' request, the Court will hold a hearing on Plaintiff's motion. That hearing is currently scheduled for November 14, 2022.

On June 14, 2022, Defendants attempted to serve the JAMS arbitration demand on Plaintiff. Since then, Plaintiff has communicated several times with Defendants and JAMS that Plaintiff has not been properly served and that she contests JAMS jurisdiction over the Parties dispute because (1) no valid, enforceable agreement exists between Plaintiff and Redgrave LLP,

1  (2) no lawful and enforceable arbitration provision exists if the partnership agreement is
2  enforceable, and (3) Redgrave LLP has waived, forfeited, or relinquished any right to arbitration.
3        Defendants continue to move forward with the arbitration proceeding at JAMS
4  notwithstanding Plaintiff's position that JAMS has no jurisdiction over Plaintiff and, therefore,
5  Plaintiff is not participating in the JAMS arbitration proceeding involving her claims.
6        Here, this Court must decide various gateway questions before any arbitration may
7  proceed at JAMS. Thus, the issuance of a TRO and injunction halting and staying the arbitration
8  before JAMS is necessary and proper.

## LEGAL STANDARD

The standards for a TRO are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.* 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate "that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008)). "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal citations omitted).

## ARGUMENT

**A.    The Court Should Hear Plaintiff's Application on an Ex Parte Basis and Without Notice to Defendants.**

Although the category of cases "in which ex parte orders are proper" is "very narrow," this case falls squarely within the category. *Shutterfly, Inc. v. ForeverArts, Inc.*, No. CR 12-3671 SI, 2012 WL 2911887, at *4 (N.D. Cal. July 13, 2012) (quoting *Reno Air Racing Ass'n, Inc. v.*

*McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)). That is because there is a significant risk that "notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing*, 452 F.3d at 1131 (internal quotation marks omitted).

As described in Plaintiff's Verified Complaint for Declaratory Judgment and Injunctive Relief, Defendants have continued to simultaneously prosecute the Florida action and the JAMS arbitration despite Plaintiff's contentions that no enforceable partnership agreement or valid arbitration agreement exists and that Redgrave LLP has waived any right to arbitrate that it may have had.

Now that negotiations between Plaintiff and Defendants have failed, Defendants continue to proceed with the JAMS arbitration. Defendants are likely to go through with JAMS expedited procedures and accelerate their efforts to have JAMS enter an arbitration award in an arbitration that Plaintiff has never agreed to submit her claims and without her participation. Accordingly, providing notice risks "render fruitless the further prosecution of the action."

For these reasons, good cause exists for purposes of Fed. R. Civ. P. 65(b)(1) for Plaintiff to not provide notice to Defendants of her application for ex parte relief. As noted above, Plaintiff seeks to proceed ex parte not to prevent Defendants from being heard in this Court. Rather, she seeks to proceed ex parte to prevent Defendants from taking actions in the existing JAMS arbitration proceedings that would harm Plaintiff and deprive her of her right to pursue her claims, should she elect to do so, in the forum of her choice and when they are ripe.

### B. Plaintiff Is Likely To Succeed On The Merits.

Plaintiff will likely succeed on the merits of her case. To establish a likelihood of success on the merits, it is not necessary for the moving party "to prove [her] case in full," or show that she is "more likely than not" to prevail. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Instead, the moving party must demonstrate a "fair chance of success on the merits" or raise questions "serious enough to require litigation." *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978).

The law provides that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). "Arbitration is a matter of contract law, and a party cannot be required to submit to arbitration any dispute which [she] has not agreed to so submit." *Id.* "The Court has the authority to issue preliminary injunction on arbitrable claims to preserve the status quo." *Teleport Mobility, Inc. v. Sywula*, No. 21-cv-00874-SI (N.D. Cal. Mar. 7, 2021); *see also MZM Constr. Co., Inc. v. N.J. Bldg. Laborers' Statewide Benefit Funds*, No. 18-16328, 2019 WL 3812889 (D.N.J. Aug. 14, 2019) (denying defendant's request for reconsideration of court's injunction staying a pending arbitration pending further factual development).[2]

### a. Plaintiff will likely succeed on her claim that no valid, enforceable agreement exists.

No agreement to arbitrate exists between the parties in the matter at hand. There is no dispute that Redgrave LLP did not provide Plaintiff with the operative partnership agreement or Joinder Agreement when Plaintiff re-joined Redgrave LLP on May 10, 2021. Given Plaintiff's history of negotiating agreements with Redgrave LLP, the absence of requested changes to any draft partnership agreement provided to Plaintiff, and the absence of any arbitration agreement, there no clear and unmistakable evidence exists that Plaintiff and Redgrave LLP agreed to arbitrate this or any dispute. This fundamental issue regarding the existence of a valid, enforceable agreement must be decided by the Court. *Harry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 530 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

---

[2] The *MZM Construction* case is instructive as it describes the "backwards procedural posture" of the matter and states, "[t]he injunction application, then, was the functional equivalent of an opposition to a motion to compel arbitration . . . The preliminary injunction granted by the Court consists of little more than obedience to the Third Circuit's command that arbitration cannot be ordered unless and until antecedent questions of fact are resolved." The Court noted further, "the standards governing arbitrability do not depend on who sued first, and *mutatis mutandis*, must be applied in the same manner to a motion to compel or a declaratory judgment action." It concludes by acknowledging "the bedrock principle that arbitration will not be ordered unless and until the court resolves controlling issues of fact regarding arbitrability."

      **b.  Plaintiff will likely succeed on the issue of arbitrability.**

Because no valid, enforceable agreement exists, there also is no agreement between Plaintiff and Redgrave LLP to arbitrate the arbitrability of any dispute between them.  Further, no written agreement between the parties includes a clear and unmistakable "delegation clause" stating that issues of the existence of a contract, legality, and waiver can be decided by a panel of JAMS arbitrators.  *Cf. Harry Schein, Inc.*, 139 S.Ct. at ("courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."); *see also MZM Constr. Co. Inc. v. N.J. Bldg. Lab*. *Statewide Benefit Funds*, 974 F.3d 386, 401 (3d Cir. 2020) ("it can hardly be said that contracting parties clearly and unmistakably agreed to [a delegation clause] when one of the parties has put the existence of that very agreement in dispute"); *see also* 9 U.S.C. § 4 (questions about the "making of the agreement to arbitrate" are for the courts to decide).  Even if a valid, enforceable agreement does exist, Section 10.4 of the 2020 Partnership Agreement limits any agreement to arbitrate to "[a]ny dispute relating to this Agreement."  Plaintiff's claims against Redgrave LLP have nothing to do with a dispute relating to the partnership agreement.  Further, any attempt by Defendants to force Plaintiff to submit her claims to arbitration violates Cal. Labor Code § 432.6.  Accordingly, these gateway questions regarding the existence of any valid and enforceable arbitration obligations are properly before this Court; they are not properly before JAMS—even under Rule 11 of JAMS Comprehensive Arbitration Rules & Procedures.

      **c.  Plaintiff will likely succeed on the issue of waiver or forfeiture.**

This dispute between the parties commenced no later than December 17, 2021, when Defendant Ogletree began communicating with Plaintiff's former counsel.  Despite nearly 100 communications through April 29, 2022, Defendant Redgrave, in concert with Ogletree, never acted consistently with any right to compel Plaintiff to submit her claims to arbitration.  Indeed, Defendants rejected Plaintiff's proposal to submit Plaintiff's offer of compromise and Defendants' counteroffer to a mediator for baseball arbitration.  Moreover, *before* submitting a Notice of Arbitration to JAMS, Defendants initiated a civil lawsuit against Plaintiff in Florida.

There are nearly 45 docket entries in the civil matter in Florida—most of which Defendants filed. Because Redgrave LLP filed a lawsuit first and continues to prosecute that lawsuit against Plaintiff, Redgrave LLP has waived or forfeited any right to arbitrate under *Morgan v. Sundance Inc.*, 142 S. Ct. 1708 (2022) by "litigating too long" and intentionally abandoning a known right; *see also Martin v. Yasuda,* 829 F.3d 1118, 1124 (9th Cir. 2016); *Leo Middle E. FZE v. Zhe Zhang*, 21-cv-03985-CRB (N.D. Cal. Jan. 24, 2022) (finding that Plaintiff waived its right to arbitrate by litigating first); *Anderson v. Starbucks Corp.*, 20-cv-01178-JD (N.D. Cal. Mar. 16, 2022) (stating, "Starbucks also does not square its active and vigorous litigation. . . with a preservation of a right to arbitration.)).

Finally, JAMS Rule 11 does not delegate the question of whether Redgrave LLP waived its right to arbitrate to JAMS. In turn, that question must be resolved by this Court. *See Anderson v. Starbucks Corp.*, 20-cv-01178-JD (N.D. Cal. Mar. 16, 2022) ("Although Starbucks' arbitration agreement has language indicating delegation of some arbitrability disputes to the arbitrator, it did not expressly delegate the question of waiver, and the Court will decide the issue based on federal law.") (citations omitted).

### C.     Plaintiff Will Suffer Irreparable Harm If She is Required to Arbitrate.

Several federal courts have held that "the injury to a party who is forced to submit to arbitration when it did not agree to do so constitutes *per se* irreparable harm[.]" *Paine Webber Inc. v. Hartmann,* 921 F.3d 507, 514 (3d Cir. 1990), *overruled on other grounds*; *Inception Mining, Inc. v. Danzig Ltd.,* 312 F. Supp. 3d 1271, 1285-86 (D. Utah 2018). These courts have found that "the time, energy, costs and fees associated with defending an unnecessary arbitration, as well as the potential cost of setting aside an unfavorable arbitration result, rise to the level of 'irreparable harm.'" *Id.; see also UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (existence of irreparable harm "is beyond dispute" if a party is compelled to arbitrate claims without having agreed to arbitration). *See also Smith v. SMX, LLC*, 18-cv-01903-JD (N.D. Cal. Feb. 20, 2019) ("There is also no question that Smith's delay in seeking arbitration was prejudicial to SMX. Litigating in federal court for an extended period of time 'will almost inevitably cause the parties to expend more time, money, and effort than had they proceeded

directly to arbitration.'") (citation omitted); *see also Anderson*, ("[s]pending a lengthy amount of time litigating in the more complex federal court system with its rigorous procedural and substantive rules will almost inevitably cause the parties to expend more time, money, and effort than had they proceeded directly to arbitration.") (citation omitted).

Permitting Defendants to proceed with the JAMS arbitration or any other alternative dispute resolution process where there is a high likelihood that Plaintiff will prevail on the merits for the reasons stated above will result in the unnecessary outlay of time and money that could be avoided by the Court's entry of a declaratory judgment that no contract exists or that there are no arbitrable issues between Plaintiff and Redgrave LLP.  This is particularly true where Redgrave LLP is solely responsible for the absence of clear and unmistakable evidence exists that Plaintiff and Redgrave LLP agreed to arbitrate this or any dispute.

Moreover, given the absence of a valid, enforceable contract resulting in the absence if a "delegation clause" permitting JAMS arbiters to decide questions of contract formation and arbitrability, permitting the pending JAMS arbitration to proceed ahead will cause Plaintiff to suffer irreparable harm by forcing her to participate in an arbitration proceeding to which she did not agree to do, and will deprive Plaintiff of her right to have her claims adjudicated by this Court (in this case) and by a jury in any future lawsuit she may pursue.

Harm also will result by obligating Plaintiff to spend money and resources in arbitration that may not be compensable by a monetary award of attorneys' fees or damages, as well as by requiring Plaintiff to participate in discovery and resolution of a case in a forum lacking the substantive and procedural safeguards provided by [federal] courts."  *Maryland Cas. Co. v. Realty Advisory Bd. On Labor Rels.*, 107 F.3d 979, 985 (2d Cir. 1997).  Granting a TRO, halting the arbitration, and staying any further action by JAMS or the Defendants is the only way of protecting Plaintiff from harm.

### D. The Balance Of Equities Weighs In Favor Of Plaintiff.

The equities at issue as well as considerations of the public's interests weigh heavily in favor of issuance of Plaintiff's requested TRO.  As described, Plaintiff is facing irreparable harm if the JAMS arbitration proceeding moves forward as Plaintiff would subject to the cost and time

of defending an arbitration matter while at the same time prosecuting this civil action for declaratory judgment and defending her interests in the Florida matter, which does not materially overlap Plaintiff's claims in this civil action. In contrast, the harm to Defendants in enjoining the JAMS proceeding is limited. The irreparable harm of forcing Plaintiff to submit to an arbitration when she did not agree to do so outweighs any harm to Defendants caused by a preliminary stay of the arbitration.

E. **Granting A Temporary Restraining Order And Preliminary Injunction Will Not Result In Great Harm To The Defendants.**

Defendants will not be harmed by enjoining the JAMS arbitration proceedings because *before* submitting the demand for arbitration to JAMS, they already chose a forum to litigate: a state court in Florida. Plaintiff does not request that the Florida matter be enjoined. Rather, Plaintiff seeks a stay of the arbitration proceedings to prosecute this civil case where Defendants can advocate for themselves before any part is forced to participate in arbitration.

F. **The Public Interest Favors Granting The Relief Sought.**

Finally, the public interest is best served in restraining a party to submit to arbitration when no agreement to arbitrate exists as in this case. It would be manifest injustice to Plaintiff and the public if Defendants could compel arbitration to a non-party to an agreement particularly when public policy and both California and federal law support Plaintiff's right to bring her claims in court.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court grant her Ex Parte Application for Temporary Restraining Order Without Notice and Order to Show Cause Why Preliminary Injunction Should Not Issue.

Date: July 26, 2022          Sign Name: */s/ Karen O. Hourigan*

                             Print Name: Karen O. Hourigan