Karen O. Hourigan (SBN 206957)
1706 Waller Street
San Francisco, California 94117
Telephone: 415.371.9255
E-mail: khourigan@exitherasap.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| KAREN O. HOURIGAN, | Case Number: 3:22-cv-4303 |
| Plaintiff, | |
| vs. | **DECLARATION OF KAREN O. HOURIGAN IN SUPPORT OF (1) PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| REDGRAVE LLP; and OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., | |
| Defendants. | |

I, Karen O. Hourigan, declare as follows:

1. I am the Plaintiff in this matter, a resident of California, and an attorney and a member in good standing of the California Bar and Washington D.C. Bar.

2. I am a former employee of Defendant Redgrave LLP.

3. I submit this Declaration in support of (1) Plaintiff's Ex Parte Application for Temporary Restraining Order Without Notice and Order to Show Cause Why Preliminary Injunction Should Not Issue and (2) Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Application for Temporary Restraining Order Without Notice and Order to Show Cause Why Preliminary Injunction Should Not Issue.  I understand this Declaration also supports factual allegations in Plaintiff's Verified Complaint for Declaratory Judgment and Injunctive Relief.

4. I have personal knowledge to state the following facts:

5. Although Redgrave LLP promised to provide me with a copy of a partnership agreement in the future and a Joinder Agreement on May 10, 2021, my first day after rejoining Redgrave LLP, neither of these things occurred.

6. My understanding at the time I rejoined Redgrave LLP, based on conversations with Jonathan M. Redgrave around March 2021, the sole member of the Executive Committee, was that the partnership agreement was being revised.  This information made sense to me because there recently had been several departures of Redgrave LLP partners between approximately November 2020 through March 2021.

7. In a draft partnership agreement that I received via email on March 19, 2021, it states that Victoria Redgrave "is retiring from the Firm as of 12:01 a.m. on January 1, 2021."  I was never asked to sign and never signed this draft partnership agreement.  My understanding is and was that this was a draft, not final partnership agreement.  I did not review this draft agreement carefully at that time because it was a draft and I expected to be provided with a revised partnership agreement at or around the time that I rejoined Redgrave LLP in May 2021.

8. During my most recent employment at Redgrave LLP, I was never presented with

or asked to sign a final version of any partnership agreement.

9.      On May 27, 2021, I signed an acknowledgement that I received and reviewed Redgrave LLP's Employee Handbook.  In at least four places in that Employee Handbook, it instructs that my employment at Redgrave LLP was at-will.

10.      The Acknowledgement that I signed states, in pertinent part: "Employment with Redgrave is 'at-will,' meaning that my employment may be terminated by me or by the Firm at any time for any non-discriminatory reason.  Further, my signature below does not create an employment contract between the Firm and me."

11.      On December 17, 2021, Defendant Redgrave LLP informed me by letter that I was being placed on paid administrative leave, that a 6–7-month secondment with a client where I was the selected secondee was terminated, and that my access to all Redgrave-issued equipment was eliminated.  This letter placing me on administrative leave was also sent to my prior counsel and attorneys from Defendant Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s ("Ogletree") Oklahoma City, Oklahoma office and Ogletree's San Francisco, California office.  A true a correct copy of this letter is attached as Exhibit 1.[1]

12.      Between December 17, 2021 and December 30, 2021, my prior counsel exchanged numerous emails with attorneys from Ogletree's Oklahoma City, Oklahoma office regarding Redgrave LLP's proposed severance package to me that required my employment at Redgrave LLP to conclude no later than December 31, 2021.

13.      On December 28, 2021, through my prior counsel, I rejected Redgrave LLP's proposed severance package.

14.      I have provided summaries and quotations from these communications in the Verified Complaint.

15.      In or around late December 2021 or early January 2022, Defendant Redgrave LLP also cancelled the American Express card that had been provided to me to pay for business related

---

[1] The redaction that has been applied to this Exhibit is to avoid revealing the secondment client.

1   expenses.   Upon information and belief, I never used that credit card for anything other than
2   business expenses.  I am not aware of any claim or allegation that I misused that credit card.

3          16.     On January 4, 2022, Defendant Redgrave LLP informed me that the Executive
4   Committee—which is one person, Jonathan M. Redgrave—determined in his sole discretion that
5   it was in Redgrave LLP's best interests that I leave the firm.

6          17.     In the January 4, 2022 letter from Redgrave LLP to me, Mr. Redgrave stated, "[t]his
7   letter provides you with ninety (90) days' prior written notice from the Executive Committee under
8   Section 7.3(c) of the Redgrave LLP (the "Firm") Second Amended and Restated Limited Liability
9   Partnership Agreement ("Partnership Agreement") that the Executive Committee has determined,
10   in its sole discretion, that it is in the best interest of the Firm for your status as a Non-Equity Partner
11   (and your employment with the Firm) to be terminated on Monday, April 4, 2022 (90 days from
12   today), unless we mutually agree on an earlier date."  A true a correct copy of this letter is attached
13   as Exhibit 2.

14          18.     Nearly four hours later, Ogletree sent an email to my prior counsel that stated,
15   "Redgrave LLP has provided Karen with notice that her employment with the Firm will terminate
16   effective Monday, April 4, 2022 . . . the Firm has decided to proceed . . . with its right to terminate
17   Karen from employment without cause."

18          19.     On January 6, 2022, my prior counsel sent a letter to Ogletree.  In part, it stated,
19   "[a]s you are aware, I represented Ms. Hourigan in 2016 when she withdrew from the partnership
20   at Redgrave LLP after (again, abruptly) being provided with an Amended Partnership Agreement
21   that would have converted her (a Founding Partner of Redgrave LLP) from an equity partner to a
22   non-equity one.  During that engagement, I observed what I believe were improper tactics used by
23   Redgrave LLP in delaying and complicating a relatively simple process in a deliberate attempt to
24   drive up Ms. Hourigan's legal fees.  Redgrave LLP's demands over the past 2-3 weeks seem to
25   reflect a rebirth of this tactic.  Redgrave LLP has not provided any responses to multiple questions
26   I have asked and, instead, vacillates between repeating impossible and inappropriate demands on
27   my client or moving the goalposts in a manner that makes any purported 'offer' from Redgrave
28

LLP to be incoherent, inconsistent, and ultimately unintelligible such that providing a meaningful response would not be productive."

20.     On January 26, 2022, I sent an email to Redgrave LLP and requested that my employee records be provided to me pursuant to California Labor Code §§ 1198.5 et seq., 432, and 226 subd. (b).  This request was necessitated by Defendants' failures to provide me or my prior counsel with several of the materials encompassed by these statutes notwithstanding Ogletree's representations to my prior counsel that Defendants would provide these documents to me.

21.     At that time, I had no recollection or record of signing any partnership agreement or Joinder Agreement related to my employment with Redgrave LLP in 2021.  I requested that my employment records be provided to me to confirm her recollection.

22.     On February 9, 2022, Defendant Redgrave LLP provided the first installment of my requested employment records to me.  This installment did not include a signed partnership agreement or Joinder Agreement.

23.     On February 14, 2022, Defendant Redgrave LLP shipped the second installment of my requested employment records to my address in San Francisco, California.

24.     On February 15, 2022, Federal Express ("FedEx") left a notice on the front door of my residence in San Francisco, California alerting me that they attempted to deliver the package containing my requested employment records but were unable to do so because no one answered the door to accept delivery.  I was in San Francisco at this time and picked up the notice myself.

25.     On February 18, 2022, I received an email from an employee at Redgrave LLP informing me that FedEx redirected the package to a nearby FedEx pickup location at a Walgreens that is located several blocks away from my home.  I have never retrieved that package from Walgreens.  It is my understanding that, as of March 1, 2022, Redgrave LLP was working with FedEx to return the package to Redgrave LLP.

26.     On March 1, 2022, Redgrave LLP's general counsel informed me that the second installment of my requested employee records were going to be sent from Ogletree to my prior

counsel, who lives in Florida.  Although this was not convenient for me because my prior counsel lives approximately 3,000 miles away, given the sensitivity of the information, I authorized this course of action so I would be able to review my employment records to confirm whether or not I signed any partnership agreement or Joinder Agreement in 2021.

27.     On March 7, 2022, I was in Florida and obtained the second FedEx package with my requested employee records from my prior counsel's office.

28.     After I retrieved that package, my prior counsel received another FedEx package that was sent by Ogletree.  That package contained a reimbursement check from Ogletree to me.  Because I was heading back to San Francisco on March 8, 2022, I instructed my prior counsel to send the check to me at my home address in San Francisco.

29.     Between March 7, 2022 and April 4, 2022, I reviewed the employee records that Defendants managed to send to me in response to my request made pursuant to California's Labor Code.  I have not located a signed partnership agreement or Joinder Agreement from my employment at Redgrave LLP in 2021.  It is my understanding that the parties to this lawsuit do not dispute that I never signed a partnership agreement or a Joinder Agreement in 2021.

30.     Between December 17, 2021 and April 4, 2022, my prior counsel exchanged numerous emails and participated in several conference calls with attorneys from Ogletree's Oklahoma City, Oklahoma office.  These conversations involved myriad topics including but not limited to (1) the return of Redgrave LLP's and the secondment client's equipment, documents, and other tangible items located in multiple locations and in three states; (2) reimbursement of business expenses I incurred on my own credit card as a result of Redgrave LLP's cancellation of my American Express card; (3) my request to continue representing a pro bono client; (4) Redgrave LLP's preservation of evidence efforts, including requests for confirmation that a written legal hold notice had been issued as early as December 2021; (5) my withdrawal as counsel of record from a lawsuit (which had been planned prior to my being placed on administrative leave); (6) coordination of moving services to remove Redgrave LLP's property from my office in San Francisco; (7) Defendants' request that I provide an offer of compromise related to employment

DECLARATION OF KAREN O. HOURIGAN

related claims that I have against Redgrave LLP based on the time that I worked there in 2021, as well as claims against Ogletree now that they have become an agent of Redgrave LLP and served in that capacity for nearly four months while I was still considered to be an employee of Redgrave LLP; and (8) Defendants' request that I sign a Certificate of Return of Property and Release, per the Partnership Agreement.

31.     I have provided summaries and quotations from these communications in the Verified Complaint.

32.     Between December 2021 and April 2022, I have incurred and paid over $16,000 in attorney fees just to leave my employment from Redgrave LLP and not to defend myself in legal proceedings against me.

33.     Based upon information and belief, as well as my review of written communications from Ogletree, at no time before April 4, 2022 did either Defendant demand that my claims against Redgrave LLP must be submitted to mandatory arbitration at JAMS based on any agreement I have signed or not signed with Redgrave LLP.

34.     On April 4, 2022, through my prior counsel, I sent a letter to Ogletree with an offer of compromise.  This letter also indicated that I resigned effective immediately from Redgrave LLP.  On that same date, I communicated my immediate resignation to Mr. Redgrave via email.

35.     In my April 4, 2022 letter, I indicated that the deadline for Defendants to accept, reject, or provider a counteroffer to it was April 15, 2022.  Given that I had never signed any partnership agreement or Joinder Agreement, I also stated, "the partnership agreement likely does not apply to me or my circumstances, including any Arbitration provision (which also does not apply because my claims have nothing to do with enforcing the partnership agreement)."

36.     On April 4, 2022, Ogletree requested to have a call with my prior counsel to discuss my offer of compromise.

37.     On April 6, 2022, the attorneys from Ogletree's Oklahoma City office spoke with my prior counsel and proposed that the parties participate in voluntary mediation to attempt to resolve my employment claims.

38.     That same day, my prior counsel communicated to Ogletree that I was not interested in mediating the underlying employment dispute.

39.     On April 15, 2022, an attorney from Ogletree's Orange County, California office sent a letter to my prior counsel rejecting my offer of compromise and providing a counteroffer. Ogletree again proposed mediation.  Again, Ogletree did not invoke the mandatory arbitration clause of any partnership agreement or other agreement in this letter.

40.     On April 18, 2022, my prior counsel communicated with Ogletree via email and informed Ogletree that I rejected Redgrave LLP's counteroffer and Defendants' proposal that the Parties participate in voluntary mediation.  In that communication, my prior counsel proposed that the parties agree to participate in baseball-style arbitration with a mediator in an effort to resolve the underlying employment dispute without resorting to litigation.  The deadline for Defendants to agree to this approach was 5:00 p.m. ET on April 22, 2022.

41.     Defendants did not agree to this proposed approach to resolve the underlying employment dispute.  Therefore, the offer expired and Defendants rejected an opportunity to participate in voluntary baseball-style arbitration conducted by a mediator.

42.     On April 22, 2022, Ogletree transmitted a letter to my prior counsel.  This letter (1) threatened to pursue claims against me by invoking the partnership agreement, (2) proposed (again) that the parties participate in voluntary mediation, and (3) requested, for the first time, that I make herself available for an interview with Ogletree notwithstanding that my employment with Redgrave LLP ended on April 4, 2022, and my prior counsel and Ogletree were in nearly constant communication for nearly four months.

43.     On April 26, 2022, an attorney from the Tampa, Florida office of Ogletree initiated a Declaratory Judgment action on behalf of Redgrave LLP against me, a resident of San Francisco, California, at all times relevant to the claims in this lawsuit and to this day.  This action is currently pending in state court in Pinellas County, Florida.  A true a correct copy of this Complaint and

Exhibits is attached as Exhibit 3.[2]

44.   I also have never seen a complete and signed version of the "2020 Partnership Agreement" to which Defendants refer in the proceedings they have initiated against me, including in the Complaint and exhibits thereto filed in state court in Florida.  *See id.*

45.   On April 27, 2022, Ogletree's attorney from its Tampa office contacted my prior counsel by telephone.  Upon information and belief, the topics of discussion included the filing of this lawsuit in Florida and Defendants' request that my prior counsel accept service of the Complaint filed in that lawsuit.  Based on information and belief, Ogletree indicated that it had prepared a demand for arbitration for arbitration with JAMS but had not yet filed it with JAMS.

46.   During this April 27, 2022 telephone call, upon information and belief, Ogletree described Defendants' position that once arbitration was initiated at JAMS, all claims would be preempted, possibly including the action for Declaratory Judgment that Defendants initiated in state court in Florida notwithstanding the fact that the civil action was filed before Defendants initiated any arbitration proceedings with JAMS.

47.   On April 28, 2022, I obtained a Notice of Right to Sue Letter from California's Department of Fair Employment and Housing ("DFEH").  Among other things, this Notice of Right to Sue Letter authorizes me to pursue my employment claims, including those alleging unlawful sexual harassment against Redgrave LLP.

48.   On April 29, 2022, Defendants submitted a Demand for Arbitration Form to JAMS.  At this time, Defendants provided no notice to me or my prior counsel that the Demand for Arbitration had been transmitted to JAMS.

49.   On April 29, 2022, my prior counsel communicated with Ogletree via email and indicated that I authorized my prior counsel to accept service of the Complaint filed in state court in Florida.

50.   On May 10, 2022, my prior counsel communicated via email with Ogletree

---

[2] All redactions in this Exhibit were applied by Defendants prior to filing these documents with the court in Pinellas County, Florida.

DECLARATION OF KAREN O. HOURIGAN

indicating Plaintiff's willingness to mediate based on certain conditions.  My change of heart regarding and my offer to participate in voluntary mediation stemmed from (1) the prior working relationship between my prior counsel and the attorney from Ogletree's Tampa office, and (2) I planned to be in Florida for a few days in early June 2022.

51.     Between May 10, 2022 and June 1, 2022, Defendants agreed that Redgrave LLP would be responsible for all the costs of mediation.

52.     During this time, Defendants rejected (1) my proposed mediators, and (2) my proposed location for mediation, which was my prior counsel's office.  Instead, I agreed to proceed with Defendants' proposed mediator at Defendants' selected location, which was not convenient for me.

53.     On June 2, 2022, the Parties participated in a voluntary mediation that lasted approximately seven hours.

54.     Although all Parties agreed that they would be better served by attempting to resolve their disputes through negotiation and mediation, these efforts proved unsuccessful.  From my perspective, the Parties' first attempt voluntary mediation is now closed.

55.     On June 13, 2022, I filed a Motion to Dismiss Complaint for Declaratory Judgment in the case pending in state court in Florida.  Although Ogletree informed my prior counsel that they planned to pursue arbitration at JAMS, I had not been served with any Demand for Arbitration, which is why I filed a Motion to Dismiss and not a Motion to Stay Arbitration in that lawsuit.

56.     That same day, I sent the DFEH Notice of Right to Sue to several employees of Redgrave LLP via email to alert them to the possibility of being named in a lawsuit that I may bring in the future.

57.     On June 14, 2022, Ogletree attempted service on me of the Demand for Arbitration form it submitted to JAMS.  I do not believe that I have been formally or properly served with this document.  I received it in my personal email account.  Based on information and belief, Ogletree sent it to a residential location in Florida that is not my residence.  I have not been in the State of

Florida since June 4, 2022 and have not received the Demand for Arbitration that Ogletree sent to a residential address in Florida.

58.     Defendants revealed my personal email address and a residential address of property I own in Florida to JAMS without my notice, permission, or consent.

59.     Defendant Redgrave LLP has invoked the November 14, 2016 Agreement, the January 19, 2019 Agreement, and a "2020 Partnership Agreement" in its Demand for Arbitration filed with JAMS.

60.     On June 17, 2022, a Senior Case Manager from JAMS communicated with me (on my personal email address that Ogletree provided to JAMS) and Ogletree regarding Defendants' Demand for Arbitration.

61.     On June 21, 2022, I communicated to the JAMS Senior Case Manager and informed the Senior Case Manager that I contest service related to the Demand for Arbitration, as well as JAMS' jurisdiction of the dispute.

62.     On June 29, 2022, Defendants filed a Response in Opposition to the Motion to Dismiss that I filed in the lawsuit in state court in Florida.  At Defendants' request, a hearing on my Motion to Dismiss is scheduled for November 14, 2022 in Florida.

63.     Defendants' papers filed with its Response in Opposition to Plaintiff's Motion to Dismiss reveal my sensitive personal information, which, upon information and belief, is in contravention of the California Constitution, the California Consumer Privacy Act, and Fla. R. Jud. Admin. 2.425(a)(2).

64.     Despite my efforts to meet and confer with Ogletree regarding this invasion of my privacy as a consumer under California law, Defendants have not removed my sensitive personal information from the public court docket in Florida, which causes irreparable harm to me.

65.     On July 5, 2022, I filed a motion in the Florida lawsuit requesting the Court to declare that the sensitive personal information that Defendants revealed be considered "confidential" and removed from the public docket in that matter.  No ruling has been issued to date.

DECLARATION OF KAREN O. HOURIGAN

66.     On July 12, 2022, in a meet and confer that I requested related to the lawsuit in a state court in Florida, I sought to meet and confer with Ogletree regarding the parties' respective efforts to preserve relevant evidence as my prior counsel and I repeatedly expressed concerns regarding the scope of Defendants' preservation efforts.  The attorney from Ogletree's Tampa office took the position that evidence preservation is not the proper subject of a meet and confer. Redgrave LLP's general counsel attended that meet and confer and did not express any disagreement with the attorney from Ogletree's Tampa office.

67.     During this meet and confer, I reiterated my position to Ogletree that I am not subject to JAMS jurisdiction and that I have not been properly served with the JAMS Demand for Arbitration.  I also communicated to Defendants my position that Defendants' multiple and long-standing actions over the course of over six months and to this day are inconsistent with any right to arbitration that Redgrave LLP may have and, therefore, have resulted in Redgrave LLP's relinquishment, waiver, or forfeiture of those rights under the United States Supreme Court's recent Opinion in *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708 (2022).

68.     At that meet and confer, the attorney from Ogletree's Tampa office made clear that he would communicate to JAMS that the arbitration should move forward in Washington, D.C., and that JAMS should provide the Parties with a panel of potential arbitrators.

69.     On July 12, 2022, the attorney from Ogletree's Tampa office informed the JAMS Senior Case Manager that the arbitration will proceed in Washington, D.C. and requested to receive a list of arbitrators to proceed ahead with the arbitration to which I am not required to submit given that I have not agreed to submit my claims to arbitration.

70.     On July 13, 2022, I blocked the JAMS Senior Case Manager's email account from communicating with me about Defendants' Demand for Arbitration and informed the JAMS Senior Case Manager of my position that I am not required to participate in the JAMS arbitration proceeding because (1) I have not agreed to and, (2) purportedly, mandatory arbitration as a condition of my employment that commenced in May 2021, violates Cal. Labor Code § 432.6.

71.     On July 14, 2022, Defendants filed a Notice of Hearing on Plaintiff's Motion to

Dismiss in the Florida state court proceeding.

72.     On July 16, 2022, I proposed that the Parties resume their voluntary mediation to attempt to resolve my employment claims and to avoid my filing of this action in the Court.  This was despite the fact that seven attorneys from Ogletree have worked on this matter.

73.     Defendants indicated that they were not available within the timeframe that was a condition I set for me to agree to resume the Parties' mediation.

74.     On July 21, 2022, I contacted Ogletree via email to request its availability for an emergency hearing regarding scheduling with the court in Pinellas County to discuss whether an earlier hearing date is available with that court.

75.     The same day, Peter Zinober of Ogletree responded that (1) he has no availability for a hearing before August 15, 2022 (despite having availability to pursue the arbitration proceeding at JAMS), and (2) a female associate who is counsel of record in the Florida matter cannot represent Redgrave LLP at an emergency hearing for scheduling purposes.

76.     Later in the day on July 21, 2022, Mr. Zinober communicated with me and stated, "Karen, I was incorrect.  I am not available for an expedited hearing on your motion to dismiss on the August dates I provided.  Moreover, we are not interested in an expedited hearing at all, because, under both federal and Florida law, the issue of arbitrability resides with the arbitrators, and not with the courts.  That is incorporated in both the JAMS Rules and in the arbitration agreements.  By the time of our presently scheduled hearing, that issue may well have been decided by our arbitrators. Thus, it would be a waste of the court's time to prepare for and to hold a hearing before the date it is presently scheduled."

77.     On July 21, 2022, I informed Ogletree and JAMS via email that I would be filing this lawsuit in this Court seeking Declaratory Judgment and Injunctive Relief shortly.   Upon information and belief, this communication from me has not resulted in even a temporary stay of the JAMS arbitration proceeding.

78.     On July 22, 2022, I downloaded a copy of JAMS Comprehensive Arbitration Rules of JAMS (effective June 1, 2021).  Upon information and belief, these are the rules that govern

arbitration proceedings at JAMS. A true a correct copy of these rules is attached as Exhibit 4.

79. That same day, I downloaded a copy of JAMS' "SUMMARY OF REVISIONS TO COMPREHENSIVE ARBITRATION RULES." A true a correct copy of this summary is attached as Exhibit 5.

80. As of July 23, 2022, there have been 44 documents filed in the lawsuit pending in state court in Florida. Of the 44 documents filed in that proceeding, Defendants filed 30 of them, which is inconsistent with enforcing any right to arbitrate that Redgrave LLP has against Plaintiff, particularly because Defendants initiated the civil action against Plaintiff in Florida. A true a correct copy of that court's docket sheet I downloaded on July 23, 2022 is attached as Exhibit 6.[3]

81. Defendants' actions have caused and threaten to continue to cause me irreparable harm in numerous ways including but not limited to exposing my sensitive personal information in a public court docket which may lead to identity theft, as well as forcing me to litigate the same claims in multiple jurisdictions and proceedings that are nowhere near where I live and (1) I have not agreed to participate in mandatory arbitration of any claims I have against Redgrave LLP; (2) upon information and belief it is unlawful to require me to submit to mandatory arbitration with my former employer; and (3) Defendants chose to pursue litigation first, not mandatory arbitration, after over four months of communications with Plaintiff and her prior counsel.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on this 26th day of July, 2022.

Karen O. Hourigan

---

[3] Redactions have been applied to this Exhibit to avoid revealing the Florida residential address. Upon information and belief, Defendant Redgrave LLP provided this information to Ogletree from documents located in my Redgrave LLP email account for Ogletree's use in the Florida lawsuit against me knowing that I am very sensitive to revealing personal information about myself unnecessarily and unlawfully.

DECLARATION OF KAREN O. HOURIGAN