# Exhibit 3

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

REDGRAVE LLP, a Delaware limited
liability partnership,

        Plaintiff,

v.                            CASE NO. _____

KAREN HOURIGAN, an individual,

        Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, REDGRAVE LLP ("Redgrave" or the "Firm"), by and through its undersigned counsel, hereby files this Declaratory Relief against its former partner, KAREN HOURIGAN ("Hourigan"). Redgrave states as follows:

### JURISDICTION AND VENUE

1.      This is an action for declaratory relief.  This Court has jurisdiction under Fla. Stat. § 26.012.

2.      Venue lies within Pinellas County because (a) the cause of action accrued in this judicial circuit and (b) a substantial part of the events giving rise to the claims in this action arose in this Judicial District.

3.      Hourigan is subject to the personal jurisdiction of this Court under F.S.A § 48.193 by either: (a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (b) breaching or causing the breach of a contract to occur within this state; (c) engaging in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise; and (d) owning, using, possessing, or holding a mortgage or other lien on any real property within this state.  Further, Hourigan has sufficient minimum contacts with, and has purposefully availed herself of the laws of, the State of Florida.

## PARTIES

4.      Redgrave is a limited liability partnership organized and existing under the laws of the State of Delaware and has its principal place of business in Chantilly, Virginia. Redgrave is a premier law firm in the United States that specializes in eDiscovery and Information Governance.

5.      Based on information and belief, Hourigan owns real property located in Safety Harbor, Florida, and has engaged a Florida attorney as her agent to negotiate with Redgrave with respect to the instant dispute (as well previously engaging the same Florida attorney as her agent in resolving a prior dispute with the Firm).

6.      Based on further information and belief, during Hourigan's recent tenure with the Firm, she spent time working for the Firm while she was located in this judicial circuit.

## COMMON FACTS

7.      In 2010, Hourigan joined Redgrave at its inception and was one of the original Partners of the Firm. As Partner, Hourigan was subject to the Limited Liability Partnership Agreement dated July 20, 2010 (the "2010 Partnership Agreement") that was drafted and adopted by the initial Partners. Under the 2010 Partnership Agreement, Hourigan was bound to arbitrate any dispute pertaining to her employment/partnership with the Firm.

8.      Effective January 1, 2016, Hourigan voluntarily left the Partnership, and became an at-will employee of Redgrave with the title "Of Counsel." Hourigan remained Of Counsel with the Firm until November 2018, when her employment ended after her voluntary resignation.

9.      In March 2021, Hourigan agreed to return to Redgrave. Specifically, on March 19, 2021, Redgrave offered Hourigan the position of Non-Equity Partner (the "Offer Letter"). Attached hereto as "**Exhibit A**" is a true and correct copy of a redacted version of the Offer Letter.

10.     As set forth in the offer letter, Hourigan "would be a Non-Equity Partner under the Redgrave LLP Second Amended and Restated Limited Liability Partnership Agreement" (the

"2020 Partnership Agreement"). Attached hereto as **"Exhibit B"** is a true and correct copy of a redacted version of the 2020 Partnership Agreement.

11.    In the offer letter, Hourigan was advised that her employment as a Non-Equity Partner was contingent upon agreeing to the 2020 Partnership Agreement:

> A copy of the Partnership Agreement will be provided to you. Please read it carefully as it details your rights and obligations as a Non-Equity Partner. **You will be required to sign a Joinder Agreement to reflect your agreement to the Partnership Agreement.**
>
> …
>
> Please review the terms of this letter and, if they meet with your approval, please confirm your agreement and intent to become a Non-Equity Partner with the Firm by signing this document in the space provided. (You would execute the Joinder Agreement on the date that you join the Firm.)
>
> Finally, irrespective of any prior conversations you have had with any partners of the Firm, all of the terms of this offer are set forth in this letter.

*See* Exh. A, p. 1-3.

12.    Hourigan agreed to the terms of the Offer Letter, signed in the space provided, and returned the document on March 22, 2021. *See* Exh. A, p. 3. She started work for the Firm on May 10, 2021 in Chantilly, Virginia.

13.    As a Partner with the Firm, she was bound to certain duties and obligations to the Firm and its clients.

14.    For instance, under Paragraph 3.8 of the 2020 Partnership Agreement, each Partner agrees "that information concerning the business and affairs of the Firm . . . .is intended to remain confidential."[1] *See* Exh. B, p. 8.

15.    Under Section 3.9, "[E]ach Partner and Former Partner shall treat as confidential all non-public information with respect to the Firm, its clients, lawyers and other staff, businesses and financial performance."[2] *Id* .

---

[1] The 2010 Partnership Agreement contained an identical provision. Attached hereto as "Exhibit C" is a true and correct copy of a redacted version of the 2010 Partnership Agreement. *See* Exh. C, 2010 Partnership Agreement § 3.7.

[2] *Cf.* Exh. C, 2010 Partnership Agreement § 3.8.

16.     Under section 3.11:

> [a]ny Partner or Former Partner who is a party to any proceeding and who seeks to
> compel the production of any information agreed to be kept confidential under this
> Agreement or any other confidential information concerning the Firm, shall enter into a
> confidentiality agreement or protective order satisfactory to the Firm to restrict disclosure
> of such information to those who are participating in such proceeding and who require
> access to such information for purposes of conducting such proceeding.[3]

*Id.*, p. 8-9.

17.     Under the 2020 Partnership Agreement, the partners at Redgrave agreed to

binding arbitration of any disputes relating to their employment/partnership with the Firm:

> Any dispute relating to this Agreement between or among the Firm, any one
> or more Partners, any one or more Former Partners, any Beneficiary, and/or
> any other representative(s) of any Former Partner(s) or any other of the
> foregoing, shall be resolved through final and binding arbitration conducted
> in accordance with the Comprehensive Arbitration Rules of JAMS by a
> panel of three arbitrators in a location mutually agreed by the parties thereto
> or, in the absence of agreement, in Washington, D.C.[4]

*See* Exh. B, 2020 Partnership Agreement § 10.4.

18.     On January 4, 2022, the Firm's Managing Partner notified Hourigan under

Section 7.3 of the Partnership Agreement that her status as a Non-Equity Partner and her

employment with the Firm would terminate effective April 4, 2022.  Hourigan was on paid leave

with the Firm effective December 17, 2021 through her separation.

19.     Efforts to address Hourigan's compliance with her duties to the Redgrave Firm

and its clients in December 2021 and thereafter were made through Hourigan's agent whom she

expressly designated in December of 2021, an attorney in Tampa, Florida.  This same Florida

attorney previously represented Hourigan with respect to her negotiated withdrawal from the

Redgrave partnership in 2016.

---

[3] *Cf.* Exh. C, 2010 Partnership Agreement § 3.10.
[4] *Cf.* Exh. C, 2010 Partnership Agreement § 10.4.

20.     A dispute has now arisen between Hourigan and Redgrave regarding Hourigan's partnership with Redgrave.  Hourigan has taken the position that she is not subject to the terms and conditions of the 2020 Partnership Agreement.  She has threatened to assert claims in court against the Firm and its Partners, while disclosing confidential information concerning the business and affairs of the Firm and its clients.  Conversely, Redgrave contends Hourigan's offer as a Non-Equity Partner was contingent upon her agreement to the terms set forth in the Offer Letter, which included agreeing to the 2020 Partnership Agreement.  Moreover, Redgrave contends Hourigan received the rights and benefits of the 2020 Partnership Agreement. Hourigan continuously invoked the Offer Letter for her benefit through 2021 and 2022, and should therefore be bound by the terms of the 2020 Partnership Agreement, including the arbitration provision.

21.     Hourigan communicated her intent not to follow the 2020 Partnership Agreement through her attorney in Tampa, Florida.

**CLAIM FOR RELIEF 1:**

DECLARATORY JUDGMENT

22.     Redgrave realleges and incorporates paragraphs 1 through 21 as if fully set forth herein.

23.     There is a bona fide, actual, and present practical need for a declaration regarding the rights and obligations of the parties under the 2020 Partnership Agreement.

24.     The declaration concerns a present, ascertained, or ascertainable state of facts or a present controversy as to a state of facts: namely, whether Hourigan is bound by the 2020 Partnership Agreement and its terms, including the confidentiality provisions and Section 10.4 regarding arbitration.

25.     An immunity, power, privilege or right of Redgrave is dependent upon the facts or the law applicable to the facts.

26.     Hourigan has, or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

27.     The antagonistic and adverse interests are all before the Court by proper process.

28.     The relief sought is not merely giving of legal advice or the answer to questions propounded for curiosity.

29.     WHEREFORE, Redgrave respectfully requests this Court:

    a.  Enter an order declaring Hourigan is bound by the 2020 Partnership Agreement, including its confidentiality and arbitration provisions;

    b.  Enter an order enjoining Hourigan's compliance with the 2020 Partnership Agreement, including its confidentiality and arbitration provisions;

    c.  Enter judgment in favor of Redgrave and against Hourigan; and

    d.  Grant such other and further relief as this Court deems just and proper.

DATED:  April 26, 2022.

Respectfully submitted,

*/s/ Peter W. Zinober*
Peter W. Zinober
Florida Bar No.: 121750
peter.zinober@ogletree.com
tamdocketing@ogletree.com
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, Florida  33602
Telephone: (813) 289-1247
Facsimile:  (813) 289-6530

*Attorneys for Plaintiff*

# EXHIBIT "A"



<div align="right">

EXECUTIVE COMMITTEE

O: 703.592.1155
www.redgravellp.com

14555 Avion Parkway
Suite 275
Chantilly, Virginia 20151

</div>

*VIA* **ELECTRONIC MAIL**

March 19, 2021

Karen Hourigan
████████████████
San Francisco, CA ████

Re:    Non-Equity Partner Position at Redgrave LLP

Dear Karen:

We are pleased to offer you a Non-Equity Partner position at Redgrave LLP (the "Firm"). This letter outlines the aspects of our offer, which is contingent upon you joining the Firm on or before May 25, 2021.

You would be a Non-Equity Partner under the Redgrave LLP Second Amended and Restated Limited Liability Partnership Agreement ("Partnership Agreement."). A copy of the Partnership Agreement will be provided to you. Please read it carefully as it details your rights and obligations as a Non-Equity Partner. You will be required to sign a Joinder Agreement to reflect your agreement to the Partnership Agreement. A copy of the Joinder Agreement is attached.

A copy of your Non-Equity Partner Compensation Memorandum[1] that the Executive Committee has approved is also attached. While the memorandum does not have specific figures regarding the actual value of certain benefits ██████████████████████████████████████ ████████████, your monthly salary will be ██████████████████████████ on an annualized basis.

████████████████████████████████████████████████████████████████

_____

████████████████████████████████

---

**WASHINGTON DC    NORTHERN VIRGINIA    CLEVELAND    CHICAGO    MINNEAPOLIS    LOS ANGELES    SAN FRANCISCO**

Karen Hourigan
Re:  Non-Equity Partner Position at Redgrave LLP
March 19, 2021
Page 2 of 3

**Expectations**

In addition to the expectations set forth in the Partnership Agreement, the current Job
Description for the Non-Equity Partner position is also attached.

As reflected in that document, your duties and responsibilities with the Firm will be varied.  We
expect that you will have client interaction and lead responsibilities on various projects.  In
addition, you will be involved in our various professional, educational, and business
development opportunities.  We expect that you will work closely with each of the individual
partners and all other employees to ensure that we are providing exceptional service and value to
our clients.   We also expect that you may be asked to assist with various aspects of Firms'
management from time to time.

**Benefits**

The Firm offers a benefits plan with eligibility requirements that vary based on the hours you
work.  Attached is a summary of the Firm's current benefits.  More information including
enrollment forms will be included in your orientation materials upon accepting the offer.  All
benefits that may be provided to you are subject to the terms of the applicable plan and/or policy.

**Contingencies**

This offer is, as a matter of policy, contingent on successful completion of your background
check and proof of right to work legally in the United States without sponsorship from the Firm,
as well as on the satisfactory clearance of any conflicts of interest that might arise in having you
join the Firm as a Non-Equity Partner.  Enclosed is a Form I-9 "List of Acceptable Documents"
for your review.

**Office Location**

Your Firm business office for letterhead and business card purposes will be at a business location
in San Francisco, which has not yet been determined.[3]  Occasionally, you may be expected to
travel to the other Firm's offices as well as to client sites to meet internal and client needs.  You
will receive a Firm-issued laptop and a Firm-issued mobile phone device, as you will be
expected to travel as needed for client and Firm business from time to time.

We are very excited about the prospects of further building this successful enterprise with your
assistance.  Please review the terms of this letter and, if they meet with your approval, please
confirm your agreement and intent to become a Non-Equity Partner with the Firm by signing this

---

[3] The Executive Director will work with you to determine the most feasible location for your office prior to your
start date.

Karen Hourigan
Re: Non-Equity Partner Position at Redgrave LLP
March 19, 2021
Page 3 of 3

document in the space provided below. (You would execute the Joinder Agreement on the date that you join the Firm.)

Finally, irrespective of any prior conversations you have had with any partners of the Firm, all of the terms of this offer are set forth in this letter.

If you have any questions, please feel free to contact us.

Very truly yours,

Jonathan M. Redgrave
Managing Partner

Signature: _____
                Karen Hourigan

# EXHIBIT "B"

# SECOND AMENDED AND RESTATED
# LIMITED LIABILITY PARTNERSHIP AGREEMENT

# REDGRAVE LLP

This Second Amended and Restated Limited Liability Partnership Agreement (the "*Agreement*") is made and entered into as of the Effective Date and sets forth the agreements of the undersigned individuals with respect to their association in the general practice of law as the Firm of **REDGRAVE LLP**. This Agreement amends, restates and supersedes all prior agreements with respect to the subject matter hereof among any of those or any other individuals associated with the Firm, including all of its predecessors.

## ARTICLE 1
## DEFINITIONS

**1.1** "*Act*" means the Delaware Revised Uniform Partnership Act (Delaware Code, Title 6 Chapter 15).

**1.2** "*Agreement*" means this Agreement and all Exhibits hereto, as the same may be amended or modified from time to time hereafter.

**1.3** "*Available Cash*" means



**1.4** "*Beneficiary*" means the Person or Persons last designated to the Firm by a Partner or Former Partner prior to his/her death. If no Person or Persons are so designated or none are living at the time a distribution to such deceased Partner or Former Partner is to be made and such last designation does not otherwise provide, the executor or administrator of the estate of such deceased Partner or Former Partner shall be deemed to be the Beneficiary.

**1.5** "*Capital Account*" means

**1.6** "*Capital Plan*" means t

**1.7** "*Effective Date*" shall mean the effective date of this Agreement as defined in Section 10.9.

**1.8** *"Equity Partner"* means a Person that is an Equity Partner as referenced and defined in Section 3.1(a).

**1.9** *"Executive Committee"* means the committee referenced and defined in Sections 4.1 and 4.4(a). As of the Effective Date of this Agreement, the Executive Committee consists of Jonathan Redgrave. Other members may be added consistent with Section 4.4(a).

**1.10** *"Firm"* means the partnership existing and continued under this Agreement as amended. The initial name of the Firm shall be "Redgrave LLP". The Firm will engage in the practice of law, and such other businesses related to or incidental thereto as the Executive Committee may approve.

**1.11** *"Fiscal year"* means ███████████████████████████████████████

**1.12** *"Former Equity Partner"* means an individual who at the referenced time is an individual whose status as an Equity Partner in the Firm has or had terminated for any reason.

**1.13** *"Former Non-Equity Partner"* means an individual who at the referenced time is an individual whose status as a Non-Equity Partner in the Firm has or had terminated for any reason other than a change in status to an Equity Partner.

**1.14** *"Former Partner"* means an individual who at the referenced time is retired, deceased or other individual whose status as a Partner (whether they were formerly an Equity Partner or a Non-Equity Partner) in the Firm has or had terminated for any reason.

**1.15** *"Founding Equity Partners"* shall mean and refer only to Victoria Redgrave and Jonathan Redgrave.

**1.16** *"Income"* and *"Loss"* of the Firm means



**1.17** *"LLP"* means limited liability partnership, as that term is used in the Act.

**1.18** *"Management Committee"* means the committee referenced and defined in Sections 4.2 and 4.5(a). The Management Committee as of the Effective Date will consist of Jonathan Redgrave. Other members may be added consistent with Section 4.5(a).

**1.19** *"Managing Partner"* means the Equity Partner named herein or elected by the Executive Committee in accordance with Section 4.8, while he/she is incumbent. The Managing Partner as of the Effective Date is Jonathan Redgrave.

**1.20** *"Non-Equity Partner"* means a Person who is not an Equity Partner but has such rights and is subject to restrictions as defined in Section 3.1(b).

**1.21** *"Non-Equity Partner Compensation Memorandum"* means a memorandum provided to a Non-Equity Partner that sets the compensation amount for that person as set forth in Section 3.2(b).

**1.22** *"Professional Regulations"* means statutes, rules, and regulations governing the practice of law in any jurisdiction in which the Firm undertakes to practice law.

**1.23** *"Partner"* means an individual who at the referenced time is or was either an Equity Partner or a Non-Equity Partner of the Firm. The rights, preferences, privileges, restrictions, and other matters relating to each class of Partners are set forth in Section 3.1 hereof. If the term "Partner" is used without designation it is intended to apply to both Equity Partners and Non-Equity Partners.

**1.24** *"Partnership Ownership Units"* means



**1.25** *"Person"* means any individual and any corporation, partnership, trust, estate, association, or other legal entity.

**1.26** **Additional Definitions.** ▆▆▆▆▆▆ terms are defined in the following Sections of this





## ARTICLE 2
## FORMATION; PRACTICE OF LAW

**2.1     Formation.** The Partners have formed a partnership under the provisions of the Act, which the Partners intend will elect and maintain LLP status.  The Executive Committee shall cause to be filed with the Secretary of State of Delaware such annual reports or other reports as may be required to maintain the Firm's status as an LLP.  The Partners agree to comply with all the provisions and requirements of the Act and any applicable Professional Regulations, which shall govern the rights and liabilities of the parties except as otherwise expressly provided herein including, but not limited to the express provisions of Sections 3 and 8 which are intended to supersede and replace the provisions of Section 15-701 of the Act.  The Firm shall register or otherwise qualify in any jurisdiction in which such registration or other qualification is necessary in order for the Firm to lawfully transact business in such jurisdiction and to maintain the limited liability protections of the Firm's LLP status.

**2.2     Purpose.**  The Firm has been formed for the purpose of engaging in the practice of providing legal services and any other purposes ancillary to such services as permitted by law. The Firm will operate in compliance with applicable Professional Regulations.

**2.3     Practice in Jurisdictions.**  To the extent that the Firm engages in the practice of law in a jurisdiction, the Firm shall comply with all Professional Regulations applicable to the Firm by reason of such practice in any such jurisdiction.

## ARTICLE 3
## PARTNERSHIP TIERS, DISTRIBUTION, COMPENSATION, DRAWS, ATTRIBUTION OF INCOME AND LOSS, CAPITAL CONTRIBUTIONS, CLIENT CONFLICTS, OUTSIDE INCOME, REIMBURSEMENT, ACCESS TO AND CONFIDENTIALITY OF CERTAIN INFORMATION AND MEETINGS

**3.1     Partnership Tiers.**   A Partner in the Firm shall be either an Equity Partner or a Non-Equity Partner.  The rights, preferences, privileges, restrictions, and other matters relating to each type of Partner are set forth below.  The Executive Committee will provide all Partners with notice of any (a) new Equity Partner, (b) new Non-Equity Partner, or (c) Partner's change in status from Non-Equity Partner to Equity Partner (or vice versa).

     (a)     Equity Partners.



      (b)     <u>Non-Equity Partners</u>.



**3.2**   **Equity Partner's Participation and Non-Equity Partner Compensation.**

   (a)   **Equity Partner's Participation.**



   (b)   **Non-Equity Partner Compensation.**





**3.3     Income and Loss.**

**3.4     Capital Contributions and Related Matters.**

**3.5     Capital Accounts.**



**3.6    Client Conflicts.**

**3.7    Outside Income.**

**3.8    Access to Information: Confidentiality.**   Each Partner hereby acknowledges that information concerning the business and affairs of the Firm and its financial performance, including without limitation, its revenues, expenses or earnings, is intended to remain confidential among the Partners for competitive and other reasons.  Except as otherwise required by the Act or other applicable law, no Partner will be entitled to review any information concerning the business and affairs of the Firm, except as otherwise determined and disclosed by the Executive Committee in its sole discretion.  Only Equity Partners shall have access to the Firm's books and records, which may be had at all reasonable times but only upon prior notice to the Executive Committee. The Firm's books and records shall be maintained at the principal office of the Firm as may be determined from time to time by the Executive Committee.  As of the Effective Date of this Agreement, that location is 14555 Avion Parkway, Suite 275, Chantilly VA 20151.  Without limiting the foregoing, it is also intended that compensation decisions regarding Partner compensation (for both Equity Partners and Non-Equity Partners) will be and remain confidential and such information will not be shared except within the Executive Committee as necessary.  For clarity and notwithstanding anything to the contrary contained in this Agreement, Non-Equity Partners shall not have access to the Firm's books and records.

**3.9    Confidentiality of Information Generally.**   Each Partner and Former Partner shall treat as confidential all non-public information with respect to the Firm, its clients, lawyers and other staff, businesses and financial performance.

**3.10**  

**3.11    Confidentiality of Information: Compelled Disclosure.**   If any Partner or Former Partner becomes the subject of any proceeding or order seeking to compel the disclosure of any

information agreed to be kept confidential under this Agreement or any other confidential information concerning the Firm, such Partner or Former Partner immediately shall notify the Managing Partner of the Firm (or the Managing Partner's designee, if the Managing Partner is the subject of any such proceeding) and provide the Managing Partner of the Firm (or designee) with such details as he/she may request concerning the proceeding or order. Any Partner or Former Partner who is a party to any proceeding and who seeks to compel the production of any information agreed to be kept confidential under this Agreement or any other confidential information concerning the Firm, shall enter into a confidentiality agreement or protective order satisfactory to the Firm to restrict disclosure of such information to those who are participating in such proceeding and who require access to such information for purposes of conducting such proceeding.

**3.12    General Obligations of Partners.**





**3.13    Reimbursement.**

**3.14    Indemnification.**

**3.15    Leave of Absence; Sabbatical.**

**3.16    Meetings of Partners.**

██████████████      ████████████████████████████
████████

## ARTICLE 4
## MANAGEMENT OF THE FIRM

**4.1      General – Executive Committee.** ████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████

**4.2      General – Management Committee.** █████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████

**4.3      General – Advisory Committee.** ███████████████████

██████████████████████████████████████████████
████████████████████████

**4.4      Executive Committee – Composition, Rights, Powers and Duties.**







**4.5**    <u>Management Committee - Composition, Rights, Powers and Duties</u>.

      (a)    Composition.



(b)     Rights, Powers and Duties.

4.6     Meetings of the Executive Committee; Voting.



**4.7     Meetings of the Management Committee; Voting.**

**4.8     Managing Partner of the Firm.**

**4.9     Other Officers.** 

**4.10    Annual Tax Information.**

**4.11    Tax Audits.**

    (a) Partnership Representative.

    (b)     Authority.



**ARTICLE 5**
**CONCLUSIVENESS OF ACTS**



**ARTICLE 6**
**LAWYERS ACTING AS FIDUCIARIES**





## ARTICLE 7
### RETIREMENT – OTHER WITHDRAWAL – INVOLUNTARY
### TERMINATION – DEATH

**7.1**

**7.3     Involuntary Termination.**  The  Executive Committee may terminate the Partner status of any Partner (a) for Cause, regardless of the Partner's age (the term "*Cause*" shall mean and include, but is not limited to: (i) the failure of such Partner to comply with one or more of his/her obligations under this Agreement in any material respect; or (ii) conduct or omissions by such Partner that he/she knew or reasonably should have known was contrary to the best interests of the Firm or any present or former client), or (b) upon at least ninety (90) days' prior written notice from the Executive Committee to the Partner if the Executive Committee determines in its discretion that such Partner's physical or mental condition is such that he/she cannot reasonably be expected to continue to perform as a Partner in the Firm, or (c) upon at least ninety (90) days' prior written notice from the Executive Committee to the Partner if the Executive Committee determines in its sole discretion that it is in the best interest of the Firm for the Person's status as a Partner to be terminated.   The Executive Committee's decision to terminate the Partner status

of any Partner involuntarily must be done by the unanimous consent of the Executive Committee, provided that, if the Partner subject to involuntary termination is on the Executive Committee, his or her consent is not required.  The Executive Committee's decision to change the Partnership status of any Partner involuntarily must be done by the unanimous consent of the Executive Committee.

**7.4** 

**7.6** **Effect.**  Any Partner who retires, withdraws or is involuntarily terminated, or who dies while a Partner, shall cease to be a Partner for all purposes on the effective date of such retirement, withdrawal or termination, or upon his/her death, as the case may be, but he/she (or his/her Beneficiary if and to the extent provided herein) shall have the right to receive all payments or distributions to which he/she is entitled as a Former Partner pursuant to Article 8.

<div align="center">

**ARTICLE 8**
**PAYMENTS IN EVENT OF ANY RETIREMENT, WITHDRAWAL,**
**INVOLUNTARY TERMINATION OR DEATH**

</div>

**8.1** **General.**



**8.2** **Distributions to Former Equity Partner.**



**8.3     Payments to Former Non-Equity Partner.**

**8.4     Capital Account.**

**8.5     Discretionary Payments upon Retirement, Withdrawal or Death.**

**8.6     Waiver of Inventory and Appraisement, etc.**

**8.7     Payments to Beneficiaries.**

**8.8     No Interests in Firm Property.**



**8.9     Non-Recourse.**

**8.10    Release.**

**8.11**

**8.12**

## ARTICLE 9
## DISSOLUTION; WINDING UP AND LIQUIDATION

9.1    **General.**



9.2    **Election or Order.**

9.3    **Distributions.**

9.4    **Firm Name.**

## ARTICLE 10
## MISCELLANEOUS

10.1    **Future Amendments.**



10.2    **Integration.**  This Agreement is intended to state all of the terms and provisions relating to the rights, duties and obligations of the Partners and Former Partners by and between each other and with respect to their Beneficiaries, and to the Firm and its management.  Any provision of any statute relating to limited liability partnerships, joint ventures or unincorporated associations, to

the extent inconsistent with the provisions hereof and which may be modified or waived by a written agreement among the parties, shall be deemed to have been modified or waived so as to be consistent with the terms hereof.

**10.3    Governing Law.**  The validity, interpretation and enforceability of this Agreement shall be determined under the law of the State of Delaware, without giving effect to its principles of conflicts of law, unless the Executive Committee has designated in writing that this Agreement shall be construed under the laws of a different jurisdiction in the United States.

**10.4    Arbitration.**  Any dispute relating to this Agreement between or among the Firm, any one or more Partners, any one or more Former Partners, any Beneficiary, and/or any other representative(s) of any Former Partner(s) or any other of the foregoing, shall be resolved through final and binding arbitration conducted in accordance with the Comprehensive Arbitration Rules of JAMS by a panel of three arbitrators in a location mutually agreed by the parties thereto or, in the absence of agreement, in Washington, D.C.

**10.5    No Third Party Beneficiary.**  This Agreement is made solely and specifically among and for the benefit of the Firm, Partners, Former Partners, Beneficiaries, and their respective successors and assigns, and no other Person will have any rights, interest, or claim hereunder or be entitled to any benefits under or on account of this Agreement, whether as a third party beneficiary or otherwise.

**10.6    Non-assignability.**  Except as expressly provided herein, no rights or interests of any Partner or Former Partner in, to or under this Agreement shall be assignable in any respect.

**10.7    Counterparts.**  This Agreement may be executed in separate counterparts by the same or different parties hereto and the aggregate of all counterparts shall have the same force and effect as an original instrument as if all the parties had signed the same document.

**10.8    Titles and Captions.**  Article and Section references in this Agreement are to the Articles and Sections of this Agreement.  Article and Section titles or captions contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

**10.9    Effective Date.**  This Agreement shall be effective as of December 31, 2020.


**[REMAINDER OF THIS PAGE BLANK. SIGNATURE PAGE FOLLOWS.]**

*[SIGNATURE PAGE TO:*
*SECOND AMENDED AND RESTATED REDGRAVE LLP LIMITED LIABILITY PARTNERSHIP AGREEMENT]*

**IN WITNESS WHEREOF,** the undersigned Equity Partners have executed this Second Amended and Restated Limited Liability Partnership Agreement to be made effective as of the Effective Date.

## EQUITY PARTNERS:

Witness:

Jonathan M. Redgrave

Witness:

Victoria A. Redgrave

## EXHIBIT A

## EQUITY PARTNERS; NON-EQUITY PARTNERS

| Names/Addresses of Equity Partners | Partnership Ownership Units | Percentage |
|---|---|---|
| | | |



| Names of Non-Equity Partners as of January 1, 2021 and continuing as of April 1, 2021 |
|---|
| |



**<u>EXHIBIT B</u>**





# EXHIBIT "C"

# LIMITED LIABILITY PARTNERSHIP AGREEMENT

## Effective as of July 20, 2010

## REDGRAVE LLP

This Partnership Agreement ("Agreement"), which is effective as of July 20, 2010, sets forth the agreements of the undersigned individuals with respect to their association in the general practice of law as the Firm of **REDGRAVE LLP**. This Agreement supersedes all prior agreements among any of those or any other individuals associated with the Firm, including all of its predecessors, except as and to the extent otherwise provided in this Agreement.

**Article 1.   DEFINITIONS**

1.1    "Act" means the Delaware Revised Uniform Partnership Act (Delaware Code, Title 6 Chapter 15).

1.2    "Agreement" means this Agreement and all Annexes hereto, as the same may be amended or modified from time to time hereafter.

1.3    "Available Cash" means 

1.4    "Beneficiary" means the Person or Persons last designated to the Firm by a Partner or Former Partner prior to his/her death.  If no Person or Persons are so designated or none are living at the time a distribution to such deceased Partner or Former Partner is to be made and such last designation does not otherwise provide, the executor or administrator of the estate of such deceased Partner or Former Partner shall be deemed to be the Beneficiary.

1.5    "Capital Plan" means 

1.6    "Managing Partner" means the Partner referred to in Article 4.7, while he/she is incumbent, and each successor designated pursuant to this Agreement, while such successor is incumbent.  The Managing Partner shall serve a three-year term.  There is no

limit on the number of consecutive or non-consecutive terms that a Partner may serve as Managing Partner. The Managing Partner shall be duly elected by a majority vote of the Executive Committee, and ordinarily shall be elected in December of the year preceding the next term. The Executive Committee will establish procedures to address any vacancy caused by the inability of a Partner to continue serving as Managing Partner prior to the end of a term of service. The initial Managing Partner will be Victoria Redgrave.

1.7    "Firm" means the partnership existing and continued under this Agreement. The initial name of the Firm shall be "Redgrave LLP." The Firm will engage in the practice of law, and such other businesses related to or incidental thereto as the Executive Committee may approve.

1.8    "Fiscal year" means ████████████████████████████████████████████
████████████████████████████████████████████

1.9    "Former Partner" means an individual who at the referenced time is or was a retired Partner, deceased Partner or other individual whose status as a Partner in the Firm or a Predecessor Firm has or had terminated for any reason.

1.10    "Income" and "Loss" of the Firm



1.11    "LLP" means limited liability partnership, as that term is used in the Act.

1.12    "Executive Committee" means the committee referenced and defined in Article 4.2. The initial Executive Committee will consist of Victoria Redgrave and Jonathan Redgrave.

1.13    "Management Committee" means the committee referenced and defined in Article 4.4. The initial Management Committee will consist of Jonathan Redgrave, Victoria Redgrave, Karen Hourigan and Ken Prine.

1.14    "Professional Regulations" means statutes, rules, and regulations governing the practice of law in any jurisdiction in which the Firm has an office.

1.15    "Partner" means an individual who at the referenced time is or was a Partner of the Firm.

1.16    "Person" means any individual and any corporation, partnership, trust, estate, association, or other legal entity.

1.17    Additional Definitions.



## Article 2.    FORMATION; PRACTICE OF LAW

2.1    Formation.  The Partners have formed a partnership under the provisions of the Act, which the Partners intend will elect and maintain LLP status.  The Executive Committee shall cause to be filed with the Secretary of State of Delaware such annual reports or other reports as may be required to maintain the Firm's status as an LLP.  The Partners agree to comply with all the provisions and requirements of the Act and any applicable Professiona Regulations, which shall govern the rights and liabilities of the parties except as otherwise expressly provided herein.  The Firm shall register or otherwise qualify in any jurisdictions in which such registration or other qualification is necessary in order for the Firm to lawfully transact business in such jurisdiction and to maintain the limited liability protections of the Firm's LLP status.

2.2    Purpose.  The Firm has been formed for the purpose of engaging in the practice of providing legal services and any other purposes ancillary to such services as permitted by law.  The Firm will operate in compliance with applicable Professional Regulations.

2.3    Practice in Jurisdictions.  To the extent that the Firm engages in the practice of law in a jurisdiction, the Firm shall comply with all Professional Regulations applicable to the Firm by reason of such practice in any such jurisdictions.

## Article 3.    PARTICIPATIONS, CAPITAL CONTRIBUTIONS, CLIENT CONFLICTS, OUTSIDE INCOME, REIMBURSEMENT, ACCESS TO AND CONFIDENTIALITY OF CERTAIN INFORMATION AND MEETINGS

3.1    Participation.



3.2　　Distributions.

3.3　　Capital Contributions and Related Matters.

3.4　　Capital Accounts.

3.5　　Client Conflicts.

3.6　　Outside Income.



3.7    Access to Information: Confidentiality.  Each Partner hereby acknowledges that information concerning the business and affairs of the Firm and its financial performance, including without limitation, its revenues, expenses or earnings, is intended to remain confidential among the Partners for competitive and other reasons.  Except as otherwise required by the Act or other applicable law, no Partner will be entitled to review any information concerning the business and affairs of the Firm, except as otherwise determined and disclosed by the Executive Committee in its sole discretion.  Without limiting the foregoing, it is intended that compensation decision regarding partner compensation will be and remain confidential and such information will not be shared except within the Executive Committee as necessary.

3.8.    Confidentiality of Information Generally.  Each Partner and Former Partner shall treat as confidential all non-public information with respect to the Firm, its clients, lawyers and other staff, businesses and financial performance.

3.9    

3.10    Confidentiality of Information: Compelled Disclosure.  If any Partner or Former Partner becomes the subject of any proceeding or order seeking to compel the disclosure of any information agreed to be kept confidential under this Agreement or any other confidential information concerning the Firm, such Partner or Former Partner immediately shall notify the Managing Partner of the Firm (or the Managing Partner's designee, if the Managing Partner is the subject of any such proceeding) and provide the Managing Partner of the Firm (or designee) with such details as he/she may request concerning the proceeding or order.  Any Partner or Former Partner who is a party to any proceeding and who seeks to compel the production of any information agreed to be kept confidential under this Agreement or any other confidential information concerning the Firm, shall enter into a confidentiality agreement or protective order satisfactory to the Firm to restrict disclosure of such information to those who are participating in such proceeding and who require access to such information for purposes or conducting such proceeding.

3.11    General Obligations of Partners.

[redacted]

3.12   Reimbursement.

3.13   Indemnification.

3.14   Leave of Absence; Sabbatical.

3.15   Meetings of Partners.



**Article 4.     MANAGEMENT OF THE FIRM**

4.1     <u>General – Executive Committee.</u>



4.2     <u>General – Management Committee.</u>



4.3     <u>Executive Committee.</u>





4.4     <u>Management Committee</u>.





4.5     Meetings of the Executive Committee; Voting.



4.6     Meetings of the Management Committee; Voting.

an
reasonably conclude that the communication was actually sent by the purported sender.

4.7.    Managing Partner of the Firm. 

4.8    Other Officers.

4.9    Annual Tax Information.

**Article 5.    CONCLUSIVENESS OF ACTS**



**Article 6.    LAWYERS ACTING AS FIDUCIARIES**

6.1

6.2

6.3

**Article 7.    RETIREMENT – OTHER WITHDRAWAL – INVOLUNTARY TERMINATION – DEATH**

7.1

7.2



7.3     Involuntary Termination.  The Management Committee may terminate the Partner status of any Partner (a) for Cause, regardless of the Partner's age ("Cause" for such termination may include, but is not limited to: (i) the failure of such Partner to comply with one or more of his/her obligations under this Agreement in any material respect, or (ii) conduct or omissions by such Partner that he/she knew or reasonably should have known was contrary to the best interests of the Firm or any present or former client), or (b) upon at least ninety (90) days' prior written notice from the Management Committee to the Partner if the Management Committee determines in its discretion that such Partner's physical or mental condition is such that he/she cannot reasonably be expected to continue to perform as a Partner in the Firm.  The Management Committee's decision to terminate the Partner status of any Partner involuntarily must be done by the unanimous consent of the Management Committee, provided that, if the Partner subject to involuntary termination is on the Management Committee, his or her consent is not required.  The Executive Committee may terminate the Partner status of any Partner upon at least ninety (90) days' prior written notice from the Executive Committee to the Partner if the Executive Committee determines in its discretion that is in the Firm's best interest for the person's status as a Partner be terminated.  The Executive Committee's decision to the Partner status of any Partner involuntarily must be done by the unanimous consent of the Executive Committee.



7.6     Effect.  Any Partner who retires, withdraws or is involuntarily terminated, or who dies while a Partner, shall cease to be a Partner for all purposes on the effective date of such retirement, withdrawal or termination, or upon his/her death, as the case may be, but he/she (or his/her Beneficiary if and to the extent provided herein) shall have the right to

receive all payments or distributions to which he/she is entitled as a Former Partner pursuant to Article 8.

**Article 8.      PAYMENTS IN EVENT OF ANY RETIREMENT, WITHDRAWAL, INVOLUNTARY TERMINATION OR DEATH.**

8.1      General.

8.2      Distributions to Former Partner.

8.3      Capital Account.

8.4      Discretionary Payments upon Retirement, Withdrawal or Death.



8.5     Waiver of Inventory and Appraisement, etc. ████████████████████
████████████████████████████████████████████████████

8.6     Payments to Beneficiaries. ██████████████████████████
████████████████████████████████████████████████

8.7     No Interests in Firm Property. ████████████████████████
████████████████████████████████████████████████████

8.8     Non-Recourse. █████████████████████████████
████████████████████████████████████████

8.9     Release. ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

**Article 9.         DISSOLUTION; WINDING UP AND LIQUIDATION**

9.1     General. ██████████████████████████████████
████████████████████████████████████████████████



9.2     Election or Order.

9.3     Distributions.

9.4     Firm Name.

**Article 10.     MISCELLANEOUS**

10.1    Future Amendments.

10.2    <u>Integration</u>.     This Agreement is intended to state all of the terms and provisions relating to the rights, duties and obligations of the Partners and Former Partners by and between each other and with respect to their Beneficiaries, and to the Firm and its management.  Any provision of any statute relating to limited liability partnerships, joint ventures or unincorporated associations, to the extent inconsistent with the provisions hereof and which may be modified or waived by a written agreement among the parties, shall be deemed to have been modified or waived so as to be consistent with the terms hereof.

10.3    <u>Governing Law</u>.  The validity, interpretation and enforceability of this Agreement shall be determined under the law of the State of Delaware, without giving effect to its principles of conflicts of law, unless the Executive Committee has designated in writing that this Agreement shall be construed under the laws of a different jurisdiction in the

United States.

10.4     Arbitration.  Any dispute relating to this Agreement between or among the Firm, any one or more Partners, any one or more Former Partners, any Beneficiary, and/or any other representative(s) of any Former Partner(s) or any other of the foregoing, shall be resolved through final and binding arbitration conducted in accordance with the Comprehensive Arbitration Rules of JAMS by a panel of three arbitrators in a location mutually agreed by the parties thereto or, in the absence of agreement, in Washington, D.C.

10.5     No Third Party Beneficiary.  This Agreement is made solely and specifically among and for the benefit of the Firm, Partners, Former Partners, Beneficiaries, and their respective successors and assigns, and no other Person will have any rights, interest, or claim hereunder or be entitled to any benefits under or on account of this Agreement, whether as a third party beneficiary or otherwise.

10.6     Non-assignability.  Except as expressly provided herein, no rights or interests of any Partner or Former Partner in, to or under this Agreement shall be assignable in any respect.

10.7     Counterparts.  This Agreement may be executed in separate counterparts by the same or different parties hereto and the aggregate of all counterparts shall have the same force and effect as an original instrument as if all the parties had signed the same document.

10.8     Titles and Captions.  Article and Section references in this Agreement are to the Articles and Sections of this Agreement.  Article and Section titles or captions contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

10.9     Effective Date.  This Agreement shall be effective as of July 20, 2010.

**[REMAINDER OF THIS PAGE BLANK.  SIGNATURE PAGE FOLLOWS.]**

[SIGNATURE PAGE TO REDGRAVE LLP LIMITED LIABILITY PARTNERSHIP AGREEMENT]

IN WITNESS WHEREOF, the undersigned Partners have executed this Limited Liability Partnership Agreement to be made effective on the date set forth in Section 10.9 above.

| | |
|---|---|
| Victoria A. Redgrave | Jonathan M. Redgrave |
| Dated: July 20, 2010 | Dated: July 20, 2010 |

| | |
|---|---|
| Karen O. Hourigan | Kenneth A. Prine |
| Dated: August ___, 2010 | Dated: August ___, 2010 |

[SIGNATURE PAGE TO REDGRAVE LLP LIMITED LIABILITY PARTNERSHIP AGREEMENT]

IN WITNESS WHEREOF, the undersigned Partners have executed this Limited Liability Partnership Agreement to be made effective on the date set forth in Section 10.10 above.

Victoria A. Redgrave

Dated: _July 20_, 2010

Jonathan M. Redgrave

Dated: _Jy 20_, 2010

[SIGNATURE PAGE TO REDGRAVE LLP LIMITED LIABILITY PARTNERSHIP AGREEMENT]

IN WITNESS WHEREOF, the undersigned Partners have executed this Limited Liability Partnership Agreement to be made effective on the date set forth in Section 10.9 above.

_____
Victoria A. Redgrave

Dated:  July 20, 2010

_____
Jonathan M. Redgrave

Dated:  July 20, 2010

_____
Karen O. Hourigan

Dated:  August  14, 2010

_____
Kenneth A. Prine

Dated:  August        , 2010

[SIGNATURE PAGE TO REDGRAVE LLP LIMITED LIABILITY PARTNERSHIP AGREEMENT]

IN WITNESS WHEREOF, the undersigned Partners have executed this Limited Liability Partnership Agreement to be made effective on the date set forth in Section 10.9 above.

_____
Victoria A. Redgrave

Dated:  July 20, 2010

_____
Karen O. Hourigan

Dated:  August ___, 2010

_____
Jonathan M. Redgrave

Dated:  July 20, 2010


_____
Kenneth A. Prine

Dated:  August 15, 2010