Karen O. Hourigan (SBN 206957)
1706 Waller Street
San Francisco, California 94117
Telephone: 415.371.9255
E-mail: khourigan@exitherasap.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| KAREN O. HOURIGAN, | Case Number: 3:22-cv-4303-LB |
| Plaintiff, | |
| vs. | **PLAINTIFF'S OPPOSTION TO DEFENDANT OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.'S MOTION FOR SANCTIONS** |
| REDGRAVE LLP; and OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., | |
| Defendants. | Date:       December 1, 2022 |
| | Time:       9:30 a.m. |
| | Location:  450 Golden Gate Avenue |
| | Courtroom B |
| | San Francisco, CA 94102 |

I.    **INTRODUCTION**

"A motion for sanctions under Rule 11 should not be made casually, as it could reflect on an attorney's record or perhaps injure [her] professional reputation, regardless of the outcome."[1] Journalist John O'Brien aptly described the present motion in an article published on October 24, 2022.  It is titled, "Ogletree firm, mad at being named defendant, wants plaintiff to suffer."[2]  One party's emotions are an insufficient basis to sanction another party and its counsel under Rule 11.

Plaintiff's claims against Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree") are neither frivolous nor pursued for an improper purpose.  As Plaintiff, a lawyer, is currently representing herself in this matter, Plaintiff has conducted a reasonable and competent inquiry into the facts and the law related to her claims.  Ogletree is properly named as a Defendant in this matter based on its own conduct as well as its role of standing into the shoes of Plaintiff's former employer, Redgrave, starting on or around December 17, 2021.  The Court, therefore, should deny Ogletree's motion for Rule 11 sanctions.  As discussed below, the Court should determine whether sanctions should be imposed against Ogletree for casually filing its motion, unreasonably and vexatiously multiplying these proceedings, and "exploit[ing] the inherently contentious aspects of the adversary system to [its] own private advantage at public expense."[3]

II.    **RELEVANT FACTUAL BACKGROUND FOR THIS OPPOSITION**

On November 5, 2021, in connection with an outside counsel led investigation regarding the termination of Redgrave employee, Plaintiff (who was not represented by counsel) reported

---

[1] Michael J. Mazurczak, *Critical Analysis of Rule 11 Sanctions in the Seventh Circuit*, 72 Marq. L. Rev. 91 (1988).  Available at: http://scholarship.law.marquette.edu/mulr/vol72/iss1/6 (last accessed Oct. 27, 2022).

[2] *See* https://legalnewsline.com/stories/633819681-ogletree-firm-mad-at-being-named-defendant-wants-plaintiff-to-suffer (last accessed Oct. 28, 2022)

[3] Address by Chief Justice Warren Burger, Agenda for 2000 A.D. - Need for Systematic Anticipation, National Conference on the Causes of Popular Dissatisfaction with the Administration of Justice (April 7-9, 1976) (conference commemorating Roscoe Pound's address to the American Bar Association's 1906 annual meeting), reprinted in 70 F.R.D. 79, 91 (1976).

to Jackson Lewis that she believed she was being unlawfully retaliated against by Mr. Redgrave and Mr. Bonanno.[4]

On or around that time, Plaintiff began investing substantial amounts of money and time researching state and federal labor and employment laws, as well as other statutes or regulations that govern computer use and employment practices in California and the United States. Plaintiff also engaged a board-certified labor and employment attorney who represented her for months during this dispute and long before (and after) any party filed a lawsuit.[5]

On April 4, 2022, Plaintiff's last day at Redgrave, Plaintiff's prior counsel sent Plaintiff's offer of compromise related to this employment dispute to Ogletree.  In that letter, Plaintiff stated, in pertinent part:

- "Several of my claims relate to unlawful intrusions into my privacy interests under the California Constitution, as well as any other applicable laws, statutes, case law, etc."

- "I understand that pursuant to Mr. Redgrave's January 4, 2022, letter to me, my last day with the Firm is today Monday, April 4, 2022. Given the severe and pervasive almost never-ending abuse, bullying, humiliation, and other unlawful conduct that I have endured for the over 20 years I have known Mr. Redgrave and the nearly 12 years I have known Vickie Redgrave, I resign effective immediately.  This decision is also based on the Firm's utter lack of regard for my safety."

- "Despite my March 19, 2021, offer letter indicating that I would be handed a partnership agreement or other document(s) to sign when I went to Chantilly, VA for onboarding in May 2021, I do not remember that happening. Nor do I recall signing the partnership agreement or any other 'joinder' document that would result in the partnership agreement being a binding contract in May 2021 or any time after that. As such, the partnership agreement likely does not apply to me or my circumstances, including any Arbitration provision (which also does not apply because my claims have nothing to do with enforcing the partnership agreement)."

---

[4] Declaration of Karen O. Hourigan at ¶¶ 5-8 ("Hourigan Decl.") (filed herewith).  In the spirit of paperwork reduction and to avoid repeating allegations previously made under oath that may be relevant to this motion, Plaintiff incorporates by reference her Verified Complaint (ECF No. 1), Declarations filed in this matter (ECF Nos. 4-2 and 27-1), and her Opposition to Defendants' Motion to Dismiss (ECF No. 27).

[5] Hourigan Decl. at ¶¶ 9-11.

- "I am told that you 'beseeched' Mr. Moyles to encourage me to write this letter. Here it is. I hope it is along the lines of what you requested and were expecting. I have included pictures because I believe that they may assist you as you advise Redgrave LLP assuming you don't withdraw upon reviewing this letter or that you can work out any potential ethical conflicts that may be brewing as a result of (1) you being both witness and counsel related to my claims (as detailed above and below) and (2) you not even knowing as of St. Patrick's Day 2022 whether Redgrave LLP has EPLI."

- "When I suggest that Ogletree is both witness and counsel (which may prove to be an untenable engagement for you), it is because **you appear to have become coconspirators with Redgrave LLP and its relevant employees who have made it their mission to threaten and intimidate me while attempting to ruin my life, my holidays, my finances, my family, my reputation, my good name, and my career.**" (emphasis added)[6]

On May 6, 2022, Plaintiff discovered two lawsuits alleging numerous labor and employment law claims filed in this district by a non-equity female partner of Ogletree. The case 18-cv-304-WHO is very similar to Plaintiff's lawsuit here. A related case, 18-cv-303-WHO, states allegations like those identified in Plaintiff's Verified Complaint in this action.[7] In that matter, Ogletree did not seek to dismiss the Complaint or Rule 11 sanctions. Instead, Ogletree filed a motion to transfer the matter to the Central District of California; it was granted.

On June 13, 2022, Plaintiff filed a motion to dismiss Redgrave LLP's Complaint in the matter pending in state court in Florida. Plaintiff attached Judge Orrick's transfer order in the cases described above as Exhibit F to that motion.

On July 12, 2022, Plaintiff informed Ogletree's Tampa attorneys and Redgrave's general counsel that she intended to file an action in California.[8] During that meet and confer, and following Plaintiff's substantial research efforts, Plaintiff inquired as to whether Defendants would remove Plaintiff's Complaint to federal court should she file it in state court. At that time, Plaintiff

---

[6] April 4, 2022 Letter from K. Hourigan to S. Fulkerson, L. Winland, and G. Cheng (of Ogletree) at 1-2, 5-6 (footnotes omitted). Plaintiff anticipates introducing this letter after confirming with the Court and Defendants that certain portions of the letter will remain confidential pursuant to a Protective Order or other relevant rules, professional responsibility obligations, or statutes. .

[7] Mr. Verde, counsel of record for Defendants here, was alleged to have "witnessed and/or contributed to the retaliation and hostile work environment" at Ogletree in the Complaint filed in 18-cv-303-WHO.

[8] Hourigan Decl. at ¶ 12.

described to counsel that the purpose of her inquiry was to try to save the parties time and money because it appeared—based on Plaintiff's research—that Ogletree typically removes employment matters initially filed in state court to federal court.[9]

On August 12, 2022, there was a hearing before this Court which resulted in a stay of the JAMS arbitration proceedings. Defendants did not contend that Plaintiff's naming of Ogletree as a Defendant violated Rule 11 nor did Ogletree inform Plaintiff of its view that Plaintiff should be sanctioned under Rule 11 during the parties' weeks' long meet and confer process or when Plaintiff agreed to allow Defendants additional time to file their motion to dismiss.

On September 14, 2022, Ogletree requested an extension of time to file Defendants' Motion to Dismiss and stated that they needed "additional time to research and address the partnership issue you raised in our meet and confer. . . ."[10]

On September 15, 2022, Plaintiff agreed to an extension of time and reminded Ogletree that Plaintiff raised the issue of whether Redgrave is a partnership on August 18, 2022.[11]

On September 27, 2022, Ogletree sent Plaintiff its Rule 11 motion after business hours.[12]

On September 28, 2022, Plaintiff informed Ogletree of her view that Ogletree's tactics were "heavy-handed, premature and improper."[13]

On September 29, 2022 Defendants filed their motion to dismiss. *See* ECF No. 25.

On October 13, 2022, Plaintiff filed her Opposition. *See* ECF No. 27.

On October 29, 2022, despite Ogletree's threats and efforts to intimidate Plaintiff, Plaintiff complied with the disclosure requirements set forth in General Order No. 71.[14]

---

[9] *Id.* at ¶ 13.
[10] *Id.* at ¶ 14, Ex. 1.
[11] *Id.* at ¶ 15, Ex. 1.
[12] Hourigan Decl. at ¶ 16, Ex. 2.
[13] Hourigan Decl. at ¶ 17, Ex. 2.
[14] Hourigan Decl. at ¶¶ 18-22, Ex. 3.

1

2

## III.   LEGAL STANDARD

### A.   Rule 11

Rule 11 of the Federal Rules of Civil Procedure imposes upon attorneys a duty to certify that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose.  Fed. R. Civ. P. 11(b); *Business Guides, Inc. v. Chromatic Comm. Enters., Inc.*, 498 U.S. 533, 542 (1991).  If a court finds Rule 11(b) has been violated, the court may impose appropriate sanctions to deter similar conduct. Fed. R. Civ. P. 11(c)(1); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("[T]he central purpose of Rule 11 is to deter baseless filings in district court.").  However, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).   Rule 11 sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 1344. "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously."  *Id.*

In the Ninth Circuit, Rule 11 sanctions are appropriately imposed where: (1) a paper is filed with the court for an improper purpose; or (2) the paper is "frivolous." *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007).  A "frivolous" argument or claim is one that is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)) (emphasis added).  "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127  (9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)).

The 1983 Advisory Committee Notes to Rule 11 include this guidance:  "A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a

basis for doing so.  The time when sanctions are to be imposed rests in the discretion of the trial judge.  However, **it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation**, and in the case of motions at the time when the motion is decided or shortly thereafter. . . ." (emphasis added).

### B.    28 U.S.C § 1927

Section 1927 provides that "[a]ny attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute is intended to deter harassing legal tactics and to compensate their victims.  *See Haynes v. City and Cty. of San Francisco*, 688 F.3d 984, 987-88 (9th Cir. 2012).  A court may award sanctions if the moving party shows (1) that opposing counsel acted "unreasonab[ly]"; (2) that, by doing so, counsel "multipl[ied] proceedings"; and (3) that counsel acted with subjective "bad faith."  *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1121 (9th Cir. 1991).  Section 1927 are designed to deter unnecessary multiplication of proceedings and tactics.  *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996); *H.P.D. Consolidation, Inc. v. Pina*, No. 15-cv-05309-EMC, 2017 WL 1046960 (N.D. Cal. Mar. 20, 2017).

### C.    The Court's Inherent Authority

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991)).  The Ninth Circuit has concluded that sanctions are available under a court's inherent power if "preceded by a finding of bad faith, or conduct tantamount to bad faith," such as recklessness "combined with an additional factor such as frivolousness, harassment, or an improper purpose." *See Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001).

### D.     Meet And Confer Requirements

Local Rule 1-5(n) defines "meet and confer" as follows in pertinent part: "'Meet and confer' or 'confer' means to communicate directly and to discuss in good faith the issue(s) required under the particular Rule or order. . . . The mere sending of a written, electronic, or voice-mail communication, however, does not satisfy a requirement to "meet and confer" or to "confer." Rather, this requirement can be satisfied only through direct dialogue and discussion – either in a face to face meeting or in a telephone conversation."

### IV.     THIS COURT SHOULD DENY OGLETREE'S MOTION FOR SANCTIONS

### A.     Gaslighting Is An Inappropriate Litigation Strategy

Merriam-Webster defines "gaslighting" as "psychological manipulation of a person usually over an extended period of time that causes the victim to question the validity of their own thoughts, perception of reality, or memories and typically leads to confusion, loss of confidence and self-esteem, uncertainty of one's emotional or mental stability, and a dependency on the perpetrator." *https://www.merriam-webster.com/dictionary/gaslighting* (visited October 21, 2022). The term is derived from the 1944 film, GASLIGHT. *See* GASLIGHT (Metro-Goldwin-Mayer 1944). "Gaslighting" describes a kind of psychological abuse in which a person denies another person's reality in order to cause that person to second-guess himself and his perceptions. *See What is Gaslighting*?, NAT'L DOMESTIC VIOLENCE HOTLINE (May 29, 2014), https://www.thehotline.org/2014/05/29/what-is-gaslighting/.

Ogletree's motion is a study in gaslighting. It contains numerous statements that are untrue. It paints Plaintiff as a lazy, incompetent, rule-breaking attorney. She is none of those things. It also seems specious because it cannot be reconciled with the motion to dismiss (ECF No. 25). It avoids Plaintiff's claims against Ogletree as if they simply don't exist. But they do. It also pretends that the dispute between Plaintiff and Ogletree started after Ogletree filed a lawsuit against Plaintiff in Florida. None of these assertions has any foundation in reality.

1
2
3

Ogletree's stunning claim that Plaintiff did not conduct a proper investigation into the factual and legal arguments before filing her Verified Complaint is wrong.  The Court can and should disregard that argument.  Ogletree had no basis for making it and knows it is false.

4
5
6
7
8
9
10
11
12
13

Ogletree's contention that its conduct falls squarely within the litigation privilege is also wrong.  While counsel of record for Defendants (excepting Ms. Winland) were not visibly involved in this employment dispute between December 17, 2021 and April 4, 2022, that does not excuse their apparent ignorance of Plaintiff's April 4, 2022 letter which identified Plaintiff's claims against Redgrave and Ogletree (well before any lawsuits were filed) and also cautioned Ogletree that an apparent untenable conflict of interest was brewing and likely would imperil its representation of Redgrave because Ogletree is and was a witness (and actor) to Plaintiff's claims and Plaintiff never waived any conflict of interest that existed while Plaintiff was a Partner at Redgrave and Ogletree was simultaneously representing Redgrave adversely to Plaintiff in this employment dispute.[15]

14
15
16
17
18

Ogletree also has not explained how the California litigation privilege applies to an attorney not licensed in California in a lawsuit pending in state court in Florida.  The litigation privilege does not protect malicious prosecution.  It also does not apply to Ogletree's Oklahoma attorneys' conduct before April 26, 2022, or its Tampa attorneys' conduct in unlawfully obtaining a background check on Plaintiff and publishing excerpts of it in the docket in Florida.

19
20
21
22
23

Ogletree's contentions related to California's Anti-SLAPP statute are unavailing because the Anti-SLAPP statute does not apply to claims made under federal subject matter jurisdiction. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010)("a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims").  As further evidence of the inapplicability of the Anti-SLAPP statute, Defendants' motion to dismiss (ECF No. 25),

24
25
26
27
28

---

[15] *See, e.g.,* California Rules of Professional Conduct, Rules 1.7, 1.9, and 3.7.  In addition, two employees of Ogletree communicated with Plaintiff on LinkedIn while she was represented by counsel which may violate attorney ethics rules to the extent states have provided guidance on what conduct is permissible on social media.  *See, e.g., id.* at 4.2.  Each of these ethical obligations may require withdrawal.

which was filed two days *after* Ogletree served its Rule 11 motion on Plaintiff, says *nothing* about Anti-SLAPP, yet acknowledges that Plaintiff has alleged violations of California law.

Finally, as promised in her April 4, 2022 letter, Plaintiff stated numerous claims against Ogletree in her Verified Complaint.  Ogletree's contention that Plaintiff named it as a Defendant because of its representation of Redgrave and its "basic act of filing litigation" (ECF No. 28 at 6-7) is demonstrably false.  The Court can and should disregard that argument, too.

### B.   Ogletree Has Unlawfully Invaded Plaintiff's Privacy In Multiple Ways

In conducting research regarding this Opposition, Plaintiff located a helpful summary of what privacy means:

> "'Privacy,' according to Webster's Dictionary, is defined as 'the quality or state of being apart from company or observation: seclusion; freedom from unauthorized intrusion; secrecy.' According to Black's Law Dictionary, 'right of privacy' means "the right to be let alone; the right of a person to be free from unwarranted publicity; and right to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.' With respect to right of privacy in terms of an invasion of one's privacy, Black's Law Dictionary notes that such a tort claim can fall into one of four classes, including 'intrusion, consisting of intrusion upon the plaintiff's solitude or seclusion, as by invading the plaintiff's home, eavesdropping, as well as persistent and unwanted telephone calls,' and as 'public disclosure of private facts, consisting of a cause of action in publicity, of a highly objectionable kind, given to private information about the plaintiff.'"

*Schuetz v. State Farm Fire*, 147 Ohio Misc. 2d 22, 44 (Ohio Com. Pleas 2007).  This quote aptly describes Plaintiff's actionable privacy claims in her Verified Complaint. Plaintiff wished to be let alone.  Ogletree persists in its unlawful conduct involving Plaintiff, as well as questionable litigation tactics of threats, intimidation, waste of the parties' and the Court's resources, and intrusions into Plaintiff's privacy.

### C.   Ogletree Did Not Meet And Confer In Good Faith

Although not required to do so, the parties agreed to meet and confer regarding Defendants' motion to dismiss during the August 12, 2022 hearing before this Court.  This process continued for weeks.  Ogletree's suggestion in its Rule 11 motion that the parties met and conferred on this motion is both stunning and false.  At no time before after the close of

business on September 27, 2022 did Ogletree inform Plaintiff of its (incorrect) view that Plaintiff's Verified Complaint is sanctionable under Rule 11.

        This conduct violates Local Rule 1-5(n) because Ogletree did not meet the rule's "confer requirement" that "can be satisfied **only through direct dialogue and discussion**." (emphasis added). Ogletree's dubious conduct by requesting additional time to file Defendants' motion to dismiss under false pretenses should not be countenanced. Also, its efforts to ambush Plaintiff with an eleventh-hour Rule 11 motion hours before Defendants filed their motion to dismiss is an improper litigation tactic. This is particularly so after Plaintiff granted Defendants (through Ogletree) two extensions of time to file their motion to dismiss. This behavior is inconsistent with Fed. R. Civ. P. 1, numerous provisions contained in this district's Guidelines for Professional Conduct, and Local Rule 1-5(n). For these reasons, the Court can and should deny Ogletree's motion for sanctions.

## V.    OGLETREE SHOULD BE SANCTIONED UNDER 28 U.S.C § 1927, THE COURT'S INHERENT AUTHORITY, OR FED. R. CIV. P. 11

        "[A]ttorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1." Fed. R. Civ. P. 11 (1993 Advisory Committee Notes). Plaintiff respectfully requests that the Court determine whether Ogletree's conduct in filing its Rule 11 motion is sanctionable under 28 U.S.C. § 1927, the Court's inherent authority, or even Rule 11 itself. Plaintiff has spent more than 60 hours of time responding to Ogletree's motion heavy-handed, premature and improper motion.

## VI.    CONCLUSION

        For the reasons stated above, the Court should deny Defendant's motion for sanctions.

Date: November 2, 2022        By:   */s/ Karen O. Hourigan*